394 So.2d 465 (1981)
Mary Louise BAKER, Appellant,
v.
Ralph E. BAKER, Appellee.
Nos. 79-1968, 80-317.
District Court of Appeal of Florida, Fourth District.
February 11, 1981.
Rehearing Denied March 20, 1981.
*466 Edna L. Caruso, West Palm Beach, for appellant.
Marjorie D. Gadarian of Jones & Foster, West Palm Beach, for appellee.
HURLEY, Judge.
Appellant/former wife appeals the denial of a motion for relief from judgment wherein she asked the court to set aside a property settlement agreement. We reverse.
On March 3, 1978, in anticipation of divorce, Mr. and Mrs. Baker executed a property settlement agreement. Shortly thereafter, on March 30, 1978, the parties were divorced and the settlement agreement was incorporated by reference into the final judgment of dissolution. On January 22, 1979, Mrs. Baker filed a motion for relief from judgment, contending that portions of the final judgment of dissolution should be vacated because the settlement agreement had been obtained through fraud or overreaching. The trial court empaneled an advisory jury which returned a verdict for appellee/former husband. The court adopted the jury's findings and denied the motion for relief from judgment. This appeal followed.
Appellant has cited several errors in jury instructions, but we have not considered these matters for trial counsel either failed to object, or in one instance, expressly acquiesced in the instruction. Thus, appellate review of these matters is foreclosed. Safeco Insurance Co. of America v. Albriza, 365 So.2d 804 (Fla. 4th DCA 1978); Schwab v. Tolley, 345 So.2d 747 (Fla. 4th DCA 1977). Our approach to this case has been guided by the principle set forth in Miller v. Miller, 149 Fla. 722, 7 So.2d 9 (Fla. 1942), Underwood v. Underwood, 64 So.2d 281 (Fla. 1953), and Zakoor v. Zakoor, 240 So.2d 193 (Fla. 4th DCA 1970), that property settlement agreements which relate to alimony or to an adjustment of the property rights of the parties made by husband and wife in good faith and free from fraud, deceit, coercion, or trickery, though made in contemplation of divorce, should be upheld by the courts. We are also mindful that it is not within the province of an appellate court to substitute its judgment for that of the trier of fact. On the contrary, the findings of the trial court come to this court clothed with a presumption of correctness and will not be disturbed absent a showing that there was no competent evidence to sustain them. Kirk v. Edinger, 380 So.2d 1336 (Fla. 5th DCA 1980); Zutell v. Sunrise Oldsmobile, Inc., 252 So.2d 822 (Fla. 1st DCA 1971).
To modify or set aside a property settlement agreement, it is incumbent upon the party seeking to abrogate the agreement to allege and prove fraud, duress, deceit, coercion or overreaching by the other party. Zedeck v. Zedeck, 334 So.2d 87 (Fla. 3d DCA 1976). Case law suggests two methods, one direct and one indirect. The direct method involves affirmative proof of fraud, misstatements, deceit, etc. The indirect method allows the party seeking to *467 invalidate a property settlement agreement to prove that the agreement is unreasonable on its face.[1] Thereupon, a presumption arises that the opposite party concealed his assets. This, in turn, shifts the burden of proof to the defending party to establish the validity of the agreement.[2]Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962).[3]
The case at bar illustrates the direct approach for here the former wife attacked the property settlement agreement by alleging that her former husband misrepresented and concealed his assets. Accordingly, we have not considered the question whether the property settlement is facially unreasonable, but have limited our inquiry to whether appellant/former wife established fraud and deceit, sufficient to vitiate the agreement, by uncontradicted testimony and evidence. In this regard, we wish to note the unusual evidentiary posture of the case. Although the former wife testified at length on direct and cross-examination, the former husband did not. He testified briefly about his May 14, 1977 personal financial statement but did not contradict any of the wife's assertions.
Turning to the evidence, Mrs. Baker testified that her husband led her to believe that his annual gross salary was $60,000, one-half of which had to be set aside for taxes. She conceded that her knowledge of family finances was sketchy since her husband paid most of the bills. Though she knew very little about the business aspects of his professional association, she was aware that her husband received a monthly check for $2,500. This was deposited into a checking account on which only Mr. Baker was authorized to draw funds and from which he gave her $400 per month for groceries and incidental expenses. To further underscore her lack of knowledge regarding family income, Mrs. Baker testified that it was her usual practice to sign the blank annual joint income tax return prior to its preparation. This practice was corroborated by the family accountant's testimony.
At some point before signing the settlement agreement, Mrs. Baker learned that her husband actually received two monthly paychecks: one for $2,500 which was used for family expenses, and one for $3,000. Shortly thereafter, she confronted her husband with this information. According to Mrs. Baker, he responded by saying:
Louise, you don't understand the corporate setup. The second check  who do you think pays the payments on that machinery in that office? I do. It's in my name. So Radiology Associates pays me every month for that, and that is what that amount of money is for, that twenty-five. That does not enter into our private income. That $2,500, that is our personal income. (Tr. 40). (Emphasis supplied.)
Again, we note that the foregoing testimony was uncontradicted. More importantly, it was shown to be inaccurate. Testimony revealed that the former husband is a radiologist and the sole shareholder of a professional association. His gross salary in 1976 was $126,476.00; it rose to $136,667.00 in 1977. On May 14, 1977, Dr. Baker signed a personal financial statement setting his net worth at $475,000.00.
*468 To test the accuracy of appellee's statement that his second check from the professional association did "... not enter into our private income," we need only look at the transactions of 1977. A tax return and an accountant's testimony set Dr. Baker's salary at $136,667.00. He paid $57,816 in taxes. Thus, the family's personal income for 1977 was $78,851.00. From this sum, Dr. Baker drew monies (the second check) to repay loans for his x-ray equipment and office building. Significantly, both loans were in joint names. Thus, it was inaccurate to state that the monies represented by the second check were not part of the family's income and to suggest further that the family had no interest in the equipment or the office. Both assets were purchased with monies from loans for which both parties are individually liable. Equally important, family income has been utilized to reduce the indebtedness. Thus, it would seem that the family has an interest in both assets.
The issue then is whether the foregoing representations by the husband were so misleading as to constitute fraud and deception sufficient to vitiate the property settlement agreement. We answer in the affirmative. While a marital relationship remains in a non-adversarial stance, each party has fiduciary-like responsibility to the other. As noted by the court in Del Vecchio v. Del Vecchio, supra, 143 So.2d at 21:
The relationship between the parties to an antenuptial [or postnuptial] agreement is one of mutual trust and confidence. Since they do not deal at arm's length they must exercise a high degree of good faith and candor in all matters bearing upon the contract.
The fact that Mrs. Baker was unrepresented by counsel, only underscores the necessity for full compliance with the fiduciary responsibilities inherent in the marital relationship. See Fuller v. Fuller, 68 So.2d 177 (Fla. 1953); Zakoor v. Zakoor, 240 So.2d 193 (Fla. 4th DCA 1970).
Thus, we conclude from the uncontradicted testimony and evidence presented below that the property settlement agreement was so tainted with fraud and deception that it was an abuse of discretion to deny appellant's motion for relief from judgment. Accordingly, we reverse with instructions to grant appellant's motion for relief from judgment, to vacate and set aside those portions of the final judgment of dissolution which incorporate the property settlement agreement, to vacate and set aside the entire property settlement agreement, to permit the parties to replead and thereafter to conduct further proceedings in accord with the principles set forth in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
Reversed and remanded with instructions.
ANSTEAD, J., and WARREN, LAMAR, Associate Judges, concur.
NOTES
[1] "In weighing the fairness and reasonableness of the provision for the wife the courts will consider the relative situation of the parties, their respective ages, health and experience, their respective properties, their family ties and connection, the wife's needs and such factors as tend to show whether the agreement was understandingly made." Del Vecchio v. Del Vecchio, 143 So.2d 17, 20 (Fla. 1962).
[2] "A valid antenuptial [or postnuptial] agreement contemplates a fair and reasonable provision therein for the wife, or, absent such provision, a full and frank disclosure to the wife, before the signing of the agreement, of the husband's worth, or, absent such disclosure, a general and approximate knowledge by her of the prospective husband's property. The term `approximate' is, for this purpose, held synonymous with `near', `close to' or `approaching'." Del Vecchio v. Del Vecchio, 143 So.2d 17, 20 (Fla. 1962).
[3] The standards established in Del Vecchio as they apply to antenuptial agreements have been supplanted by § 732.702, Fla. Stat. (1975). In re Estate of Reed, 354 So.2d 864 (Fla. 1978). Yet they continue to apply to postnuptial agreements. Bailey v. Bailey, 300 So.2d 294 (Fla. 4th DCA 1974).