DOWNEY, Judge.
This is a non-final appeal taken pursuant to Florida Rule of Appellate Procedure 9.130(a)(5) from an order denying appellant’s rule 1.540(b), Florida Rules of Civil Procedure, motion to vacate a final judgment of dissolution of marriage. The motion to vacate was filed within one year of the judgment.
Appellant, Marion Elaine Hitt (wife), and appellee, Robert Arden Hitt (husband), were divorced in November, 1986, after twenty-five years of marriage. At the time of the hearing on the motion to vacate, the husband was age fifty-five and the wife was age forty-five. They had two adult children, Amy, age twenty-four, and Stephanie, age twenty.
The husband had three years of college and advanced flight training and, for the past twenty-five years has been a pilot for United Airlines. His 1987 salary as a captain was $125,000. The wife is a high school graduate and she spent most of the marriage as a homemaker, raising their two children. During the salad days of the marriage the parties lived comfortably in Fort Lauderdale, Florida, and owned certain luxury items, such as boats, airplanes, and a vacation house in Bimini. During the marriage the only assets accumulated were the marital home, the Bimini house, some silver bars, an investment in a shopping center, a Minnesota Grove Trust and *632 the husband’s United Airlines pension valued at $200,000.
In the late 1970’s and early 1980’s, the parties began to experience marital difficulties due, apparently, to the husband’s excessive drinking. As a result, he continually found fault with the wife and eventually the parties decided they should consider a divorce. After a serious argument while the children were in the house, the parties sat down with the children and explained that they were no longer compatible and were considering terminating the marriage. The husband explained that the divorce would be amicable, that they would divide everything they had, that he would take care of the wife and see that she was never in need; and that he would provide for Stephanie’s college education. In view of that, the husband explained that they did not need to involve any lawyers as he would simply buy a divorce kit and they would handle the proceeding, such as it was, themselves. For financial reasons it was contemplated that they would postpone the actual divorce proceedings until a more propitious time. Thereafter, on numerous occasions the husband assured the wife and both girls that they need not worry because he and the wife were going to divide all of their property and he would always provide financial support for the wife. During all this period of time, the husband pleaded with his wife not to see a lawyer — they couldn’t afford lawyers, it wasn’t necessary and he intended to take care of her adequately.
Things apparently got worse rather than better and the husband acquired a girlfriend and, in due course, the wife, while on a trip to visit her daughter Amy in California, met a boyfriend. Finally, the parties decided to go forward with the divorce and they prepared and filed the necessary papers in the divorce kit. Then, at the appointed time, the wife went to an uncontested hearing and the husband’s girlfriend appeared as the residency witness. At the brief unreported hearing, the trial judge noted in the margin of the Petition for Dissolution of Marriage the name of the residency witness, “no minor children” and “no property.” At that hearing a Final Judgment of Dissolution of Marriage was entered dissolving the marriage. No other relief was requested or granted.
After the judgment was entered, the wife went to California and took up residence with her boyfriend and obtained a job as a clerk in a hardware store where she earns $968 per month. Shortly after the dissolution, the husband moved his girlfriend into the marital home and suggested to Stephanie, who lived at home, that she move out, which she did, for a while, at her father’s expense. For some months, the husband sent the wife $700 per month, assuring her that when he got straightened out financially he would send more, but he did not. Nor was there any action on the division of any of the other marital assets, joint or otherwise. The evidence is that the wife was existing on her clerk’s salary plus what the husband deigned to send her and it was a hand-to-mouth existence. Thus, in September, 1987, she filed her motion to vacate the judgment because the husband was not fulfilling his promises to her and the children.
In her petition to vacate the judgment the wife contends that her husband tricked her into asking only for a dissolution of the marriage based upon his assurances that they would divide everything and he would take care of her and his prevailing upon her not to seek the assistance of counsel. The husband filed a Unilateral Pre-Trial Stipulation, in which he admitted that the parties agreed, prior to the divorce, that they would divide all of their property.
A hearing was held on the petition, at which the court heard the testimony of the wife, the two daughters, and the husband, who was called as an adverse witness by the wife. The two daughters strongly supported the wife’s testimony that the husband was the dominant figure in the marriage; that he had told all of them on several occasions that he and the wife intended to dissolve the marriage; that they should not involve lawyers because they could not afford it and it was unnecessary since they were going to divide all of their property equally and he was always going to support her. This arrangement left *633 nothing to be done but to have the court dissolve the bonds of matrimony, which is exactly what happened. Under their agreement it was unnecessary to have the court divide their property, as they were to do it themselves. Thus, the wife asked for no relief but dissolution and the court noted there was “no property” to be divided.
In testifying as an adverse witness, the husband admitted the agreement to divide their property equally, although it appears his intention, if anything, was only to divide the home, furniture, the Bimini property, the silver bars, and the Citrus Town & Minnesota Grove investments. No express mention was made of the primary asset of the marriage, his airline pension fund and the tax refund of some $24,366. In any event, the critical evidence adduced to demonstrate that the husband had coerced his wife into a pro forma divorce was the promise to split their assets and take care of her financially for life. It appears from his post dissolution conduct that this was a misrepresentation, as he did not intend to do either and, in fact, did not do either. Nevertheless, the trial court, at the conclusion of the wife’s evidentiary presentation, dismissed the wife’s petition on the grounds that she had unclean hands in that she perpetrated a fraud upon the court in alleging that the only thing to be resolved was the dissolution of the marriage.
In its written order denying the motion to vacate, the trial court found, among other things, that:
(b) Prior to said final hearing, the Husband promised the Wife that he would give her half of everything and take care of her for life and the youngest of their daughters until her college graduation.
(c) The course of conduct followed by the parties to date has resulted in an unequi-table distribution of the marital assets of the parties, shortchanging the Wife in that, at present, the husband has not made the property distributions as promised.
(d) Whether or not either party would seek to obtain legal representation prior to the final hearing was discussed by them and neither chose to engage a lawyer. The cost of legal services being the main area of discussion.
(e) The assets not addressed by the parties include the Husband’s present salary of approximately $125,000.00 a year, the Wife’s present salary of approximately $8,000.00 a year and the vested pension fund of the Husband.
(f) The Wife expressed a desire to quickly terminate the marriage so that she might move to California to reside with her boyfriend. The Husband undertook the support of their otherwise emancipated 20 year old daughter. Both factors considered by the Court as explanation, among others, for the course of action taken by the parties.
On this record, we believe the trial judge misconstrued the legal effect of the evidence. As pointed out, the only proof adduced was by the wife in support of her motion, albeit the husband was called as an adverse witness. Most of the critical testimony by him, as an adverse witness, that did not agree with her testimony was contradicted by her other proof, see Busser v. Sabatasso, 143 So.2d 532 (Fla. 3d DCA 1962), and, thus, we are considering a so-called directed verdict at the end of the movant’s case, which posture requires that the court accept that evidence as true. However, even without that rule, the proof is virtually uncontradicted.
In our judgment there was no fraud perpetrated upon the trial court by the wife. Parties are at liberty to divide their property as they see fit without the intervention of the court handling the dissolution. In fact, settlements between parties are always encouraged. The fraud in this case, it appears, was perpetrated by the husband’s insisting, in fact begging, the wife not to involve a lawyer and assuring her that they would divide all their assets and he would assume her support forever. Relying upon those assurances, she accepted the divorce kit route that he proposed and simply had the marriage dissolved by the court. Had he fulfilled his promises, no one could ever have criticized their method of dissolving their marriage. Would that it could realistically be done *634 more often that way. Thus, we conclude that resort to the doctrine of unclean hands was not indicated in this case. As Judge Walden opined in his partial dissent in Cain v. Cain, 436 So.2d 367, 369 (Fla. 4th DCA 1983):
Denying access to the Court based on the doctrine of unclean hands is an extreme sanction which ought to be invoked under only the most provocative or contumacious circumstances. It is tantamount to striking a party’s pleadings.
Without belaboring the matter further, suffice to say that the evidence before the court clearly supported the wife’s motion to vacate the judgment of dissolution of marriage so that, standing alone, the wife would be entitled to a vacation of the judgment of dissolution and an opportunity to consult with counsel and seek an equitable distribution of their property. However, since the case was terminated without a full hearing, it appears that, on remand, the trial court should allow the parties to proceed with a full hearing of the evidence on the motion to vacate, including the ad-duction of further evidence on behalf of the wife, if she so chooses.
HERSEY, C.J., and WALDEN, J., concur.