558 So.2d 470 (1990)
Terry TENNEBOE, Appellant,
v.
Suzanne TENNEBOE, Appellee.
No. 88-0503.
District Court of Appeal of Florida, Fourth District.
March 14, 1990.
*471 Valentine Gabaldon, West Palm Beach, for appellant.
Jack Edward Orsley of the Law Offices of Orsley & Cripps, P.A., West Palm Beach, for appellee.
ESQUIROZ, MARGARITA, Associate Judge.
The former husband appeals a final judgment of dissolution of marriage, parts of which approved and incorporated a property settlement agreement and also incorporated the court's earlier order denying the husband's motion to set aside the agreement. We reverse.
Two weeks after the former wife filed her petition for dissolution of marriage, the parties executed a property settlement agreement. The husband sought to challenge the agreement on grounds of misrepresentation and overreaching, initially raising these claims by answer and affirmative defenses filed roughly one month after execution of the agreement. The husband raised these grounds again in his motion to set aside the agreement, which was heard and denied by the trial court some five weeks prior to the final hearing on the petition for dissolution of marriage. Following the final hearing, the court entered the final judgment under review.
At the hearing on the husband's motion to set aside the agreement, the husband, an electrician by trade, testified that he must work seven days a week, taking only one day off per month, in order to earn gross wages of about $1,000.00 per week. According to the husband, if he were to work a regular work week, he would gross just over $640.00 per week. Yet his monetary obligation under the terms of the agreement amounts to $700.00 per week, of which $340.00 represents permanent periodic alimony, and $360.00 represents child support ($60.00 per week for each of the couple's six minor children). The husband testified that, netting barely over $800.00 *472 per week in a seven-day work week, he lacks the ability to support himself, but must be supported by another person if he is to continue to meet the all-too burdensome payments called for by the agreement. Additionally, in light of the heavy work schedule that he must maintain to meet the payments, he cannot even afford to become ill. The husband's financial affidavit filed at the time of the final hearing reflects net earnings of $812.57 per week. Of this figure, he attributes $757.57 to net wages from his employer of nine years, Pratt and Whitney, and $55.00 to outside electrical contracting work. The wife is a homemaker who has not worked in the last few years.
The husband testified that he was not represented by an attorney at the time of either the preparation or execution of the agreement, which was drafted in its entirety by the attorney representing the wife. He testified that when he signed the agreement at the wife's attorney's office, he protested that the payments were more than he "could handle," and inquired of the wife's attorney whether, by virtue of the agreement, the permanent alimony payments were set for the rest of his life. In response, the wife's attorney told him that he could return to court at a future time to have the payments modified, but according to the husband, the wife's attorney did not tell him that he would have to show a substantial change in circumstances or financial ability in order to obtain such reduction. The wife contradicted the husband's testimony on this issue, stating that the attorney did tell the husband "that there would have to be a substantial change in income" for a later modification of the payments. The husband testified that he signed the agreement at that time in reliance on the attorney's representation, and that he would not have signed the agreement had he known that in order to prevail on a later request for modification, he would have to establish a change in circumstances or financial ability. Thus, the husband testified at the final hearing of dissolution that he did not enter into the agreement freely and voluntarily.
In his written order denying the motion to set aside the agreement, the trial judge first wrote that the husband had failed to prove "that which the law requires in order to set aside the agreement," but then proceeded to leave open a clear avenue for relief by specifically adding the following language:
The court notes that he may be entitled to some relief at final hearing if he can show a substantial change of circumstances between the time of the agreement and the time of the hearing. The court requests that the attorneys research that point prior to hearing. (Emphasis in original)
At the final hearing, however, the trial judge refused to hear any evidence or entertain the husband's request for relief any further, expressing the view that the order entered after the initial hearing was "the law of the case dispositive of that issue."[1] The judge then proceeded to approve the agreement and incorporate it into the final judgment of dissolution of marriage.
In Casto v. Casto, 508 So.2d 330 (Fla. 1987), the supreme court recently re-visited the principles governing the trial court's decision to vacate or modify a postnuptial agreement in dissolution proceedings. Essentially, the supreme court in Casto approved two separate grounds by which either spouse may challenge a marital agreement and have it vacated or modified. The second ground is inapposite to this case, inasmuch as there is no claim or issue herein of concealment or nondisclosure of marital assets or income by either spouse. Focusing on the first ground endorsed by Casto, a spouse may set aside or modify a marital agreement by establishing that the agreement was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching. Casto v. Casto, 508 So.2d at 333. This avenue has provided a traditional and fertile ground *473 under Florida law by which parties to the marital relationship have successfully challenged marital agreements upon proper allegations and proof of fraud, misrepresentation, overreaching, or other forms of misconduct expressly recognized by the cases. See, e.g., Hitt v. Hitt, 535 So.2d 631 (Fla. 4th DCA 1988) (fraud and misrepresentation); Berger v. Berger, 466 So.2d 1149 (Fla. 4th DCA 1985) (coercion and duress); Paris v. Paris, 412 So.2d 952 (Fla. 1st DCA 1982) (coercion and duress); Baker v. Baker, 394 So.2d 465 (Fla. 4th DCA 1981) (fraud and misrepresentation); Bakshandeh v. Bakshandeh, 370 So.2d 417 (Fla. 3d DCA 1979) (coercion and duress); Moss-Jacober v. Moss, 334 So.2d 89 (Fla. 3d DCA 1976) (overreaching); Demaggio v. Demaggio, 317 So.2d 848 (Fla. 2d DCA 1975) (fraud); Kern v. Kern, 291 So.2d 210 (Fla. 4th DCA), cert. denied, 294 So.2d 657 (Fla. 1974) (misrepresentation). See also Lanes v. Lanes, 454 So.2d 782 (Fla. 4th DCA 1984) ("mistake" under Fla.R.Civ.P. 1.540(b)). Equally well established in Florida law is the principle that lack of legal representation of one of the parties to a marital settlement agreement is not sufficient, in and of itself, as a ground to have the agreement vacated or modified. Bubenik v. Bubenik, 392 So.2d 943 (Fla. 3d DCA 1980); McGuire v. McGuire, 385 So.2d 151 (Fla. 3d DCA 1980). Cf. Casto v. Casto, 508 So.2d at 332, 334-335.[2] Rather, the presence or absence of legal representation is just one factor for the court to consider and weigh, along with all other circumstances in the case, when claims of fraud, duress, or other actionable misconduct are made by the spouse challenging a marital agreement. See Paris v. Paris, 412 So.2d at 954; Moss-Jacober v. Moss, 334 So.2d at 91. See also Baker v. Baker, 394 So.2d at 468.
In the present case, the husband brought an almost instant challenge to the property settlement agreement following its execution. The husband's prompt actions not only lend credence to his claims, but also debilitate the notion that the challenge could have come as an afterthought.
At the initial hearing, the court received testimony from both parties concerning the circumstances surrounding the execution of the agreement. The wife's testimony differed from that of the husband mainly on the issue of whether the wife's attorney informed the husband of the change in circumstances requirement. Otherwise, it is undisputed from the testimony of both husband and wife, as well as that of the wife's attorney who chose to testify[3], that the wife's attorney did hold a conversation with the husband at the attorney's office on the subject of the husband's claimed inability to afford the alimony payments called for by the agreement. Indeed, the wife's testimony corroborated that her attorney discussed with the husband the prospect of a later modification of the alimony payments.[4] If the wife's attorney told the husband that he could return to court later to have the payments reduced, without also explaining that he would have to establish a substantial change in circumstances or financial ability, he misinformed *474 him.[5] Indeed, the husband's efforts to obtain relief in the trial court met with resounding defeat, both at the hearing on the motion to set aside the agreement as well as at the final hearing of dissolution, which only served to confirm the intricacies inherent in successfully obtaining such relief. In any event, the advice given by the wife's attorney was, at best, an oversimplification.[6]
On the husband's claim of overreaching, the terms of the agreement leave him with the meager sum of $112.57 every week, with which he must cover all of his living expenses and debts.[7] Additionally, the husband is to quit claim to the wife all of his interest in the marital home, virtually the sole marital asset, thereby leaving her with the parties' full equity of $30,000.00 in the home. He is also to transfer to the wife the parties' 1982 Chevrolet van, assume all their debts, and contribute $750.00 to the wife's attorney's fees and costs. The husband is to keep only the automobile worth $500.00 and his employer's pension plan and credit union account worth a total of approximately $10,500.00. Needless to say, the effect of the agreement's provisions is, literally, "to force the husband from his modest economic status to a state of relative impoverishment." Satanonchai v. Satanonchai, 522 So.2d 1030 (Fla. 3d DCA 1988). See also Kanouse v. Kanouse, 549 So.2d 1035 (Fla. 4th DCA 1989). Evidently, the support provisions of the agreement are clearly disproportionate to the means of the husband.
When viewed in light of this factual scenario, the fact that the husband was unrepresented takes on added significance. Unless both spouses have separate counsel at the time of preparation and execution of the agreement, the marital relationship remains in a non-adversarial stance, and each party has fiduciary-like responsibility to the other. Fleming v. Fleming, 474 So.2d 1247, 1249 (Fla. 4th DCA 1985); Baker v. Baker, 394 So.2d at 468. In Baker, this court quoted from Del Vecchio v. Del Vecchio, 143 So.2d 17, 21 (Fla. 1962), to describe the spousal duties at that stage of the marital relationship:
The relationship between the parties to an antenuptial [or post-nuptial] agreement is one of mutual trust and confidence. Since they do not deal at arm's length they must exercise a high degree of good faith and candor in all matters bearing upon the contract.
Baker v. Baker, 394 So.2d at 468, quoting from Del Vecchio v. Del Vecchio, 143 So.2d at 21. As this court reasoned in Baker:
The fact that Mrs. Baker was unrepresented by counsel only underscores the necessity for full compliance with the fiduciary responsibilities inherent in the marital relationship.
Baker v. Baker, 394 So.2d at 468 (citations omitted).
With these principles in mind, and in view of the specific circumstances present in this case, we conclude that the trial court abused its discretion in refusing to set aside the property settlement agreement. The husband's evidence on the matters of *475 misrepresentation and overreaching was persuasive enough to steer the exercise of discretion in the direction of affording the husband relief from the rigorous provisions of the agreement. As an added, although by no means the sole, or even a necessary consideration, the fact that the husband was unrepresented by counsel at the time of the agreement's execution highlights the need for openness and candor in all matters bearing on the transaction, and shuns misinformation and unfair advantage. Additionally, in light of the clear wording of the court's earlier order that the husband might be entitled to relief at the final hearing based on changed circumstances, the trial judge should have entertained the husband's motion at the final hearing, rather than foreclosing relief altogether by stating that the prior denial was "the law of the case." See Posner v. Posner, 257 So.2d 530 (Fla. 1972).[8] Accordingly, we reverse and remand with instructions to grant the husband's motion to set aside the property settlement agreement and to vacate and set aside those portions of the final judgment of dissolution which approve and incorporate the agreement. On remand, the trial court may take such further evidence of the parties' current financial circumstances as is necessary to determine the case and shall conduct all such further proceedings as are consistent herewith. Except for that portion of the judgment dissolving the marriage, we reverse and remand with instructions.
Reversed and remanded with instructions.
GLICKSTEIN and POLEN, JJ., concur.
NOTES
[1] We note, in fairness, that another trial judge presided at the initial hearing and entered the order quoted from.
[2] In Casto, the court expressly reaffirmed its prior ruling in Cowen v. Cowen, 95 So.2d 584 (Fla. 1957), that incompetent legal representation is not a basis to vacate an agreement in a dissolution proceeding.
[3] On his conversation with the husband at his office, the wife's attorney had the following to say: "Judge, I make it a point when somebody is not represented, the first thing is to tell them that I don't represent them, and they should get their own counsel. I have learned the hard way, I'm in my ninth year of practice, I have learned the hard way that way. I can't swear that I didn't talk to him about the alimony provision. I don't remember saying anything about the alimony, other than the change in the amount. But if I did say anything about changing the amount later on, I would have couched it in terms that there had to be a substantial change in circumstances, if that was said. That's really all I have to say."
[4] During questioning by her attorney, the wife testified as follows:

Q. And do you recall meeting with your husband and yourself in my office.
A. Uh-huh.
Q. Do you recall anything I said to him regarding alimony?
A. Just what you stated, that there would have to be a substantial change in income.
[5] During questioning by the wife's attorney, the husband testified as follows:

Q. And is it your testimony that I did not tell you that it would take a substantial change in circumstance 
A. Did not.
Q. I did not tell you it would take a substantial change in circumstances?
A. That is my testimony.
[6] The comment to Rule 4-4.3 of the Rules of Professional Conduct, promulgated by the Florida Supreme Court as Chapter 4 of the Rules Regulating The Florida Bar, addresses the attorney's dealings with unrepresented persons and provides:

An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. During the course of a lawyer's representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel.
Fla.Bar R.Prof.Conduct 4-4.3
[7] According to the husband's financial affidavit and his unrebutted testimony on this issue, he takes in $812.57 in net income and pays out $700.00 every week.
[8] At the hearing on the motion to set aside the agreement, the wife's attorney offered in evidence the financial affidavit worksheet that had been prepared jointly by the husband and wife, purportedly reflecting the husband's financial information prior to the time the property settlement agreement was executed. The worksheet listed income of $1,680.00 over and above the husband's regular wages. The husband's testimony established, however, that this was merely "anticipated" income from outside electrical contracting work that never materialized, and the wife did not rebut this. Thus, it appears that the husband's actual income at the time of the hearing was significantly less (by a monthly sum of over $1,400.00) than the figure initially provided in the worksheet. Indeed, it is a reasonable assumption that the figures provided in the jointly prepared worksheet may have served as the basis to determine the husband's monetary alimony obligation under the agreement that the attorney prepared. The trial judge should have therefore afforded the husband the opportunity to be heard on the matter of modification of the alimony payments  the husband's only real quarrel with the monetary obligations called for by the agreement. It is well recognized in Florida that the alimony provisions of an otherwise valid and binding marital agreement are nonetheless modifiable upon a showing of a change in circumstances occurring between the time of execution of the agreement and the time of the hearing. Posner v. Posner, 257 So.2d 530, 533-34 (Fla. 1972); Posner v. Posner, 233 So.2d 381 (Fla. 1970); Singer v. Singer, 318 So.2d 438, 441 (Fla. 4th DCA 1975); Bailey v. Bailey, 300 So.2d 294 (Fla. 4th DCA 1974). See § 61.14, Fla. Stat. (1987).