W. SHARP, J.
The City of Daytona Beach appeals from an order denying its petition to forfeit a 1992 Chevrolet Suburban owned by Marsha Bush. The determinative issue at trial was whether Bush was entitled to the “innocent owner” defense created by section 932.703(6)(a), Florida Statutes (1997). That section provides that an agency (in this case, the City) seeking to forfeit property under the Florida Contraband Forfeiture Act, must prove by a preponderance of the evidence that “the owner either knew or should have known after reasonable inquiry that the property was being employed or was likely to be employed in criminal activity.” The trial court interpreted this to mean the City had to prove actual knowledge on the part of Bush. We think this is an incorreet legal standard. Because the record and the trial court’s findings establish constructive knowledge on Bush’s part, we reverse.
This hearing followed a probable cause hearing pursuant to the Florida Contraband Forfeiture Act.[1] In this proceeding *336 the City had to establish by clear and convincing evidence that the vehicle had been used in violation of the Act. Based on the facts and circumstances presented at the hearing, the trial judge determined the City had proven its case for forfeiture, as to that aspect. However, he stated he thought the innocent owner defense, which the City had the burden of proving by a preponderance of the evidence,[2] was “real close.” Relying on an improper standard, he raled for Bush.
The facts and evidence in this case were largely undisputed and much of it was stipulated into evidence by the parties. On June 26, 1998, Bush’s son, Noble Gaethers, formerly known as Gene Bush and also known to the police as A-l, was observed by Officer Eisner driving the Suburban at a high rate of speed in Dayto-na. Emanating from the vehicle was extremely loud music from a very large stereo system in the rear of the car. Officer Eisner stopped the Suburban for the traffic infraction.
As Officer Eisner approached the Suburban, he noted a strong odor of raw marijuana coming from the interior of the vehicle. The passenger in the front seat had loose marijuana on his chest and lap. Eisner placed him under arrest. Eisner then noted a digital scale with white residue on the arm rest between the sets. He found a cigar box inside the arm rest with 26.8 grams of crack cocaine, 1.6 grams of powdered cocaine, and 13 baggies of cannabis. He also found large sums of currency— $707 and $1,486, respectively. He arrested Gaethers and seized the contraband, currency, and the car. Officer Eisner stressed that the odor of raw marijuana was “permeating,” and he speculated that if a person were to open the door of the vehicle “today” the odor would still be very noticeable.
The Suburban was purchased by Gaeth-ers for $12,000 in cash on March 9, 1998. He was listed as the sole driver and owner. On April 2, 1998, warrants were issued for Gaethers’ arrest for second degree attempted homicide and throwing a deadly missile (shooting at persons in another car). He was arrested on April 23, 1998 for those crimes. The officers who searched the apartment where Gaethers was then living, found large quantities of cannabis, powdered cocaine, a scale with drug residue, baggies with rock cocaine, glass bowls with residue, and miscellaneous small baggies used in the drug trade. One officer noted that at the time Gaeth-ers was arrested, the smell of burnt cannabis was strong on his person and breath. Gaethers got out of jail on a $26,000 bond.
On May 20, 1998, Gaethers telephoned his mother, Bush, and asked her to meet him at the automobile registration office. He told her he was giving the car to her for a belated Mothers Day gift. She had been upset because none of her children remembered her on Mothers Day. After that, she said she did not think she saw her son again until June 26th. She testified the Suburban was kept at her home and she had possession of both sets of keys.
Bush testified that she has two other vehicles — a Plymouth Voyager (a van) and a 1977 Oldsmobile (a collectible). She is still paying for the Plymouth. She said she needed the Suburban for her church activities, although she acknowledged she did have the van she used for that purpose. She did not, however, remove the loud stereo equipment from the rear of the Suburban, nor did she remove the license plate from the front — a large white tag which says “FROM THE MUSCLE.” She did not add the Suburban to her auto insurance policy, which she had for her other two vehicles, until July 1, 1998 — five days after the Suburban had been seized.
Bush acknowledged she was aware Gaethers had been arrested numerous times in the past. She said she visited him in jail many times and was aware he was *337 involved in criminal activity. She also admitted she knew he had not held a steady job and she had no idea where he could have earned $12,000 in cash to buy the Suburban.
Stipulated in evidence were various arrest reports and summaries of Gaethers’ extensive criminal past. They are not all in the record but are reported to be at least 56 pages in length. The more recent records, which were placed in evidence, involve serious charges — -attempted second degree murder; shooting into a vehicle; grand theft, firearm; possession of firearm by a convicted felon; two arrests for trafficking in cocaine; carrying a concealed weapon; four arrests for possession of cannabis; attempted first degree murder; attempted first degree arson; armed burglary; aggravated battery; shooting at victims.
Although Mrs. Bush testified she knew her son was in and out of jail and extensively involved in criminal activity, she said he had not lived with her for eight years, and she did not see much of him. She said she did not know what her son did “out there.” He did not involve her, and she did not see him on a regular basis.
On June 25, 1998, Gaethers telephoned Mrs. Bush and asked her if he could use the Suburban. She asked why. He said he needed it so he could move his clothing and personal belongings from where he was then living to another location. She said okay, but that she would need to use the Suburban at noon to go to lunch. She drove the vehicle to work. On June 26, 1998. Gaethers picked it up about ten o’clock a.m. He was arrested at 11:53 p.m.. and the vehicle was seized at that time.
Sandra Wallace, Gaethers’ wife from whom he is separated, testified she works in the same office as Gaethers’ mother. She talked with Gaethers the morning he came to pick up the Suburban. He asked her if he could store some of his personal belongings in a spare room she had and she agreed. He told her he was moving. However, she did not testify- he ever arrived at her apartment with his personal effects. Officer Eisner testified he did find a few shirts, some compact discs and a cell phone in the Suburban.
The trial court concluded at the end of the hearing that Mrs. Bush knew Gaethers had been extensively involved over the years in criminal activities. “It’s also clear that Mom knew that her son had been in a heck of a lot of trouble with the law over the years. There is no question about that.” He also said there was no question where Gaethers got the money to buy the Suburban. “That probably came from illegal conduct....” He also noted that the Suburban still had Gaethers’ nickname on the nameplate on the front and was still loaded up in the back with a lot of sound equipment. He concluded that there was a very good possibility Gaethers gave his mother the car “to avoid having the state take it because of his other illegal conduct.”
There was also undisputed evidence that Gaethers’ criminal activity, known to his mother, involved selling drugs and contraband, and use of vehicles. This evidently is his dedicated occupation. Although Mrs. Bush said she tried not to know what he was doing “out there,” a person cannot avoid being charged with constructive knowledge, as in this case, by hiding her head in the sand like an ostrich, and proclaim lack of actual knowledge.[3]
Despite these undisputed facts and findings, the trial judge concluded that the City had failed to prove its case because he thought the City had to prove Bush “really” knew Gaethers was going to use the Suburban, at the very time he borrowed it, for trafficking in drugs. The judge said the City established Gaethers “likely once again at some time in his life, probably *338 very soon in his life,” ... [would] “commit another criminal act.” But that was not sufficient proof.
We think the trial judge employed the wrong legal standard in this case by requiring, in essence, actual knowledge on the part of an owner seeking to defeat a forfeiture. Constructive knowledge is sufficient. See, e.g., In re Forfeiture of 1987 Chevrolet, VIN No. 1G1JF11W7H7159637, 605 So.2d 1322 (Fla. 1st DCA 1992); Gross v. City of Wilton Manors, 487 So.2d 303 (Fla. 4th DCA 1986); In re Forfeiture of 1981 Oldsmobile, 593 So.2d 1087 (Fla. 1st DCA 1992). Further, the 1997 statute specifically states that forfeiture can be based on evidence that the owners should have known after reasonable inquiry that the vehicle was “likely to be employed in criminal activity.”
Bush knew of Gaethers’ extensive past dealing in drugs, his lack of repentance or rehabilitation, the probable illegal source of the funds used to buy the vehicle, the probable motivation for its transfer to her (to shield it from seizure), and the illegal purposes for which Gaethers had likely purchased and used the Suburban. Based on these undisputed facts and findings by the trial judge, it was unreasonable on Bush’s part, no matter what Gaethers told her, not to expect he would likely use the Suburban in his “trade,” drug dealing, which he did. See U.S. v. One, 1985 BMW, 696 F.Supp. 336 (N.D.Ill.1988). That is sufficient proof of constructive knowledge under this Florida Contraband Forfeiture Act to merit forfeiture. Accordingly, we reverse and remand with directions to enter an order forfeiting the vehicle.
REVERSED and REMANDED.
PETERSON, J., concurs.
DAUKSCH, J., concurs specially with opinion.

. § 932.703, Fla. Stat. (1997).

. § 932.703(6)(a), Fla. Slat. (1997).

. See generally, McDonald v. Rose, 50 So.2d 878 (Fla.1951); McLaughlin v. Department of Natural Resources, 526 So.2d 934, 939 (Fla. 1st DCA 1988); Applefield v. Commercial Standard Ins. Co., 176 So.2d 366 (Fla. 2d DCA 1965).