750 So.2d 711 (2000)
Christian Edward COOPER, Appellant,
v.
Melodie AUSTIN f/k/a Melodie Ann Cooper, Appellee.
No. 5D98-3250.
District Court of Appeal of Florida, Fifth District.
January 14, 2000.
Rehearing Denied February 9, 2000.
Steven J. Guardiano, Daytona Beach, for Appellant.
Joan Stefanec Briggs, of Adams, Briggs & Briggs, Daytona Beach, for Appellee.
HARRIS, J.
Cooper appeals the trial court's denial of relief from a final judgment which adopted a mediation agreement Cooper alleges was obtained by extortion and which was the basis for the court's contempt citation also appealed herein. We agree with Cooper and reverse.
During the course of a lengthy mediation, it is undisputed that the wife sent Cooper the following note:
If you can't agree to this, the kids will take what information they have to whomever to have you arrested, etc. Although I would get no money if you were in jailyou wouldn't also be living freely as if you did nothing wrong.
Relatively soon thereafter, the parties "settled" their property matters.
Although the trial judge recognized the extortionate nature of the note, he refused to give relief because he determined that the agreement did not result from the wife's demands.[1]
In the words of Judge Dauksch, taken from his concurring opinion in a recent case,[2] "How the appellee ... baffled the judge baffles me." In the midst of extended negotiations before the mediator, the wife sent the husband a note that constituted classic extortion. However, the wife convinced the judge that the note was merely a "wake-up" call and did not influence the agreement subsequently reached. The court relied on two established facts to reach this conclusion. First, the husband did not immediately accede to the *712 wife's demands but continued to negotiate for a period thereafter. Second, the husband did not seek relief from the extortionate agreement until after his efforts to reconcile with the wife failed. Even accepting these facts as true, we cannot agree that they negate the effect of extortion when reviewing the remainder of the record.
The husband testified, without contradiction, that the result of the mediated agreement was that the wife received $128,000 in marital assets while the husband received $10,000.[3] In her answer brief filed in this case, the wife does not dispute the unequal distribution of marital assets as alleged by the husband. This grossly unequal distribution speaks volumes about the effect of the extortionate note sent by the wife. The fact that the husband continued to hold out on signing the agreement until the wife, at the last minute, agreed to deliver the key to the storage unit in which his personal property (supposedly including the incriminating photographs) was stored in exchange for $2,500 does not justify the conclusion that extortion did not influence the agreement. Rather it seems that the delay was necessary in order for the husband to achieve the quid pro quo for the agreementthe redelivery of the evidence of his alleged crime to him.[4] Nor does the fact that the husband delayed this action until reconciliation failed indicate that extortion played no role in the agreement. Had the parties reconciled, the effect of the extorted agreement would have been mooted.
Perhaps the finding that the agreement did not result from extortion was influenced by a previous "finding" in the divorce action that "the terms and conditions of said agreement appear to be just and reasonable." But the record does not support that finding because the agreement contained no asset valuation. The wife conceded at the hearing to set aside the agreement that she had perjured herself in submitting, prior to the dissolution final hearing, a financial affidavit that showed zero assets.[5] If the husband's uncontested testimony concerning the grossly disproportionate *713 distribution of marital assets is true, the agreement was neither just nor reasonable and does not justify ignoring the clearly extortionate actions of the wife.
The court in Baker v. Baker, 394 So.2d 465 (Fla. 4th DCA 1981), had no problem reversing the trial court on facts less egregious than those involved herein.[6] In doing so, the Baker court, while accepting the trial court's findings of fact which adopted an advisory jury's decision in favor of the husband, rejected the trial court's decision upholding the property settlement agreement by holding that the "representations by the husband were so misleading as to constitute fraud and deception sufficient to vitiate the property settlement agreement."
In this case, the wife's "wake-up call," which demanded the husband either give in to her demands or go to jail, was clearly extortionate and her presentation of the extorted agreement to the court was a fraud on the court making the trial court an instrument of her extortion. Mrs. Cooper should not profit from her actions. Nor should this Court, or any court, ignore them.
REVERSED and REMANDED with instructions to proceed in accordance with this opinion.
PETERSON, J., concurs
GRIFFIN, J., dissents, with opinion.
GRIFFIN, J., dissenting.
This is not the first time an appellate court has been unable to overcome the urge to trump factual findings of a trial judge with which the panel violently disagrees, nor will it be the last. But it is awkward when it happens. Without the benefit of observing any witness or hearing any testimony, the majority has decided that the trial judge's finding that the wife's threat did not cause the husband's settlement is wrong. Not unsupported by any competent substantial evidence, but wrong. How, the majority asks incredulously, could the trial judge have allowed himself to be hoodwinked in this fashion?
After reading the transcript of the hearing, it is clear to me that Judge Hammond simply did not believe Mr. Cooper. This is important because there are only three items of evidence to support Mr. Cooper's claim of duress: (1) the threat; (2) the apparent[1] uneven distribution of assets; and (3) Mr. Cooper's testimony that the reason he entered into the agreement was because of the threat.
The lower court so much as said it did not find Mr. Cooper to be credible. First of all, Mr. Cooper, who has a bachelor's degree and a master's degree in business, both from Duke University, and was the sales manager for an electronics firm, testified repeatedly that he had no idea of the value of the marital assets and was defrauded by the "zero assets" financial affidavit filed by his wife. The evidence, in fact, showed that he had a very good idea of what the marital assets were. He also admitted that prior to mediation neither he nor his counsel had undertaken any effort to determine what the marital assets were, suggesting that he knew. He also testified (as he necessarily had to for purposes of the duress claim) that after several hours of mediation, including the two hours before the threat was made, he learned nothing about the marital assets, which was incredible on its face. As the lower court said in paragraph 10 of the appealed order:
10) The Former Husband's statements that he is entitled to relief because the Former Wife's Financial Affidavit did *714 not list any assets or liabilities and therefore was fraudulent is without merit because of the Former Husband's knowledge of the assets and liabilities of the parties at the time of the Mediation Settlement Agreement and because the Former Husband did not rely upon the Former Wife's Financial Affidavit.
There was direct conflict between Mr. and Mrs. Cooper concerning Mr. Cooper's response to her threat. She testified that his response was that he was not scared, that the kids did not "have anything" and that he knew that he "owed it to her to put her through school." He, on the other hand, testified that he agreed to the financial division because he was in fear of arrest because "certain photographs were in possession of my wife's adult son and daughter of a young lady that I believed to be of age but did not have proof that she was of age." Additionally, this supposedly "underage" woman that he was taking these sexually explicit pictures of was, according to the affidavit, at least twenty-three when he first photographed her. Later, "in the several years of their relationship" he took hundreds more pictures of her. His current claim that fear of exposure for photographing someone he knew to be an adult simply because he had no proof of her age is not worthy of belief. Judge Hammond pointed out also that Mr. Cooper obtained an affidavit of "proof of age" from the woman on March 21 but continued to pay under the agreement until June when he and his ex-wife had a final parting of the ways. As the lower court succinctly said: "[T]he former husband knew that the photographs in his possession were not illegal." There is also the fact that Mr. Cooper, his free will forborne due to his "fear of arrest," continued to negotiate the agreement for another two and one-half hours after the threat was delivered, during which time the demand in the note for $3,500 for forty-eight months was reduced to $3,000 for six months and $2,500 for thirty months. Finally, as Judge Hammond alluded to, the provision that he recover his personal property (including photographs) was a last minute addition to the agreement, suggesting that recovering the "incriminating evidence" was not at all a primary motivation for the settlement as he later claimed. Judge Hammond's description in his order concerning Mr. Cooper's ongoing motivations differs dramatically from the description in the majority opinion:
9) Notwithstanding the Former Husband is [sic] protestation that he entered into the Mediation Settlement Agreement as a result of the Former Wife's coercion and threats, the handwritten note and the Former Husband Is [sic] comments can not [sic] be looked at in a vacuum and must be looked in light of his subsequent actions. The fact that he received all of the benefits of the mediation agreement as adopted by the Final Judgment, made all alimony payments to the Former Wife through May, 1998, received back all of the personal property he was concerned about, continued his pursuit of the Former Wife are not the actions of a man who was subject to extortion, coercion or duress.
The court finished with this finding:
11) The Former Husband's Amended Motion for Relief was filed not as a result of extortion, duress, coercion or fraud perpetrated by the Former Wife but as a result of the Former Wife's rejection of the Former Husband in June of 1998.
Mr. Cooper had to show duress by clear and convincing evidence. See, e.g., K.C. v. Adoption Services, Inc., 721 So.2d 811 (Fla. 4th DCA 1998). Our standard of review for this case is narrowwe can reverse only if no reasonable judge could say that there was not clear and convincing evidence of duress. I think lots of reasonable judges could say that Mr. Cooper did not prove duress by clear and convincing evidence, the majority's "bafflement" notwithstanding. Indeed, the judge who heard and saw these people found that Mr. Cooper was not motivated by *715 duress. Even if the standard in this case were preponderance of the evidence, there certainly is evidence to support Judge Hammond's decision. We should affirm.
NOTES
[1] We second the position of Judge Sorondo stated in his concurring opinion in Metropolitan Dade County v. Martinsen, 736 So.2d 794, 796 (Fla. 3d DCA 1999), that when a court discovers that a litigant has, in the course of litigation, committed an offense that strikes at the very integrity of our system of justice, it should report such conduct to the appropriate authorities for appropriate action. Although Judge Sorondo was directing his comments at perjury committed during the course of litigation, submitting an agreement obtained by extortion to the court for approval is equally contemptuous of the judicial process and undercuts the very foundation of our judicial system.
[2] City of Daytona Beach v. Bush, 742 So.2d 335 (Fla. 5th DCA 1999).
[3] The agreement in evidence reveals that the wife received the parties' IRA account (amount unspecified), the parties' checking and savings account (amount unspecified), the parties' 1996 income tax refund (amount unspecified), her vehicle (value unspecified), and one-half the value of the marital home. In addition to her "share" of marital distribution, she also received $18,000 in rehabilitative alimony payable at $3,000 per month for six months and $75,000 in non-modifiable rehabilitative alimony payable at $2,500 per month for 30 months thereafter. In addition, the husband was required to pay the wife $2,500 in order to gain access to the storage unit presumably containing the evidence supporting her extortion. The husband was also required to pay all of the family credit card obligations except those incurred by the wife after separation. The husband was given one-half of the proceeds from the sale of the marital home once it sold.
[4] The crime threatened to be reported by the wife was Cooper's photographing a nude, underage girl. Cooper, who had experienced first hand the law's disapproval of this practice on an earlier occasion, was aware that in going through his property, the wife's children had found a photograph taken by him of a young woman who indeed looked underage. It was not until shortly before this action for relief from judgment was filed that Cooper tracked down the woman and verified she was "of age" at the time the photograph was taken.
[5] The wife's perjurious financial statement would normally be the yardstick in measuring the reasonableness of any settlement agreement. Perhaps it was of no concern in this case because the wife testified that although the court may not have known the truth, her husband knew or should have known of her lie. More probably it is because the court has become numbed by the appalling lack of candor present in a number of domestic cases. It is therefore refreshing to see the strong stand taken by the Third District in relation to perjury committed in the context of an accident case. In Metropolitan Dade County v. Martinsen, 736 So.2d 794 (Fla. 3d DCA 1999), the court applied the "well-settled law `that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends.'" Is not a domestic case a civil proceeding?
[6] In Baker, the husband had merely misstated the amount of his income. The court, holding the parties to "a high degree of good faith and candor in all matters bearing upon the contract," held the agreement so tainted with fraud and deception that it was an abuse of discretion to deny the wife relief.
[1] As footnote 3 of the majority opinion reflects, many of the assets are not valued in the record.