GROSS, C.J.
 

 Jeffrey and Roni Cohen had been married for six years when Jeffrey filed for divorce in 2006. It was the husband’s second marriage and the wife’s fourth. They had no children together. At the time of the final judgment, the husband was 58, and the wife 57. The litigated issues concerned the valuation of assets, alimony, and the wife’s attempt to have the husband’s non-marital assets declared marital. The trial court entered a final judgment favorable to the husband on the financial issues. The wife appeals, raising eleven points in her brief. We affirm and briefly address some of the issues raised.
 

 In a temporary relief order, the trial judge ordered the husband to (1) pay the wife $3,500 per month in temporary support, (2) pay $11,640 per month to cover other expenses, (3) maintain the wife’s health insurance and pay the cost of her prescriptions, (4) maintain all insurances in effect at the time of the order, and (5) pay $100,000 in attorney’s fees to the wife’s lawyer. The order gave the wife exclusive use of the marital home. The husband appealed and this court affirmed.
 
 See Cohen v. Cohen,
 
 955 So.2d 70 (Fla. 4th DCA 2007).
 

 The wife changed attorneys in the middle of the litigation. Her second attorney filed companion motions to amend the counterpetition and for a continuance of the final hearing. The wife’s initial counterpetition indicated that she might seek to amend it to add third party claims to gain jurisdiction over trusts and other entities controlled by the husband. The wife suspected that the husband had been tunneling marital assets into these entities. In her motions to amend and for a continuance, the wife asserted that the husband had hidden his assets and not made full disclosure of his finances.
 

 The trial court denied both motions in a detailed order that explained its reasoning as follows. This was a lengthy, hotly litigated case with extensive discovery. The husband had provided numerous financial records pursuant to multiple discovery requests. The ease had been set for trial 13 months after filing. The wife’s accountant did not specify a concrete reason why more discovery was required. Based on the history of the case, the trial court was concerned that litigation costs would skyrocket. The judge observed that the husband had made reasonable efforts to comply with discovery
 
 *405
 
 and, given the complexity of his finances, it was likely no amount of discovery would satisfy the wife. The court concluded that the detailed amount of discovery already supplied would be sufficient for the court to make reasoned and informed decisions on the issues. However, if it became apparent during trial that the wife needed additional time to make a case, the judge indicated that he would reconsider a continuance. In sum, the trial court denied the motions because the wife’s requests were “neither warranted nor justified and would result in an inordinate delay and a radical increase in fees and litigation costs.”
 

 After sitting through four days of trial, the court reaffirmed its earlier rulings on the motions to amend and to continue. The court wrote in the final judgment:
 

 Discovery has been an issue throughout this litigation and the subject of numerous hearings and court proceedings. Despite claims by the Wife to the contrary, the Court finds that the Husband has, for the most part, been extraordinarily forthcoming from the very onset of litigation in providing and assisting Wife and her forensic accountants in their quest for documentation. Those requests total 14 in number and resulted in the production of over 16,000 pages of financial information. Wife’s repeated attempts, both prior to and at the time of trial, to further continue this case due to alleged dilatory conduct and a lack of production on the part of the Husband are unfounded. The court was unable, over the course of several days of trial, to discern any noticeable prejudice to Wife’s counsel or her forensic accountant due to any alleged lack of disclosure or production in addressing the critical issues of equitable distribution or alimony.
 

 A court’s decision to permit or refuse amendment to pleadings should not be disturbed on appeal in the absence of an abuse of discretion.
 
 See Horacio O. Ferrea N. Am. Div., Inc. v. Moroso Performance Prods., Inc.,
 
 553 So.2d 336, 337 (Fla. 4th DCA 1989). A court’s ruling on a motion for a continuance is similarly reviewed for abuse of discretion.
 
 See Horan v. Horan,
 
 464 So.2d 224, 227 (Fla. 4th DCA 1985). The trial court did not abuse its discretion. The wife relies on cases that are plainly distinguishable, cases involving summary judgments entered (1) where discovery had not yet occurred,
 
 see Smith v. Smith,
 
 734 So.2d 1142, 1144 (Fla. 5th DCA 1999), or (2) where a defendant had “yet to answer” interrogatories,
 
 see Crowell v. Kaufmann,
 
 845 So.2d 325, 327 (Fla. 2d DCA 2003). The court’s stated reasons were a proper exercise of discretion that we will not disturb.
 

 At the final hearing, the trial court considered detailed evidence concerning the parties’ finances. The husband’s business was real estate development. During the marriage, the parties had two checking accounts in joint names, one used by the husband, the other by the wife. The husband used his account to manage money from various sources; he deposited money from business ventures and trusts into that account and transferred business money out. He kept an unreconciled ledger of all transactions, with designations such as loans, income, and expenses. The various business entities and trusts kept independent records that verified most of the transactions in more detail.
 

 On appeal, the wife challenges the court’s decision regarding a number of assets. The heart of many of the arguments is that she disagrees with findings of fact made by the trial court, which resolved most conflicts in the husband’s favor. “ ‘[T]he findings of the trial court come to
 
 *406
 
 this court clothed with a presumption of correctness and will not be disturbed absent a showing that there was no competent evidence to sustain them.’ ”
 
 Waton v. Waton,
 
 887 So.2d 419, 422 (Fla. 4th DCA 2004) (quoting
 
 Baker v. Baker,
 
 394 So.2d 465, 468 (Fla. 4th DCA 1981)). We therefore “take the facts most favorably in support of the trial court’s decision.”
 
 Id.
 

 The decision regarding the assets largely hinged on the court’s evaluation of the credibility of two accountants, who had drawn different conclusions from almost identical data. There was no middle ground. The trial court found that the husband’s accountant was “the more credible” and “accepted his opinion as to the valuation of the major items in dispute.” The court adopted that accountant’s methodology, which identified and segregated individual marital and nonmarital transactions in the checking account controlled by the husband. Also, the court found it significant that the wife was not willing to accept certain properties at the valuation levels identified by her accountant. In evaluating nonmarital assets in a marriage,
 

 the task for the trial court in a dissolution proceeding is to determine whether the recipient intended that the asséts remain non-marital or whether the recipient’s conduct during the marriage gives rise to the presumption of a gift to the other spouse.
 

 Lakin v. Lakin,
 
 901 So.2d 186, 190 (Fla. 4th DCA 2005). Here, the trial court believed the husband’s testimony that he did not intend to make gifts to the wife when he deposited funds from various sources into the jointly titled account. The husband intended to use the account to manage his many business interests, and placed the wife’s name on the account in the event there was an emergency. The court determined that some of the funds transferred were properly characterized as loans. The trial court made an express finding that the husband had not earned more than $12,000 since 2005. Competent, substantial evidence supports the trial court’s conclusion that the nonmarital assets in dispute did not become marital ones subject to equitable distribution.
 

 Finally, we address the issue of alimony. For a marriage of about six years duration, the wife sought a lump sum payment of $500,000 plus five years of bridge-the-gap alimony of $8,344 per month. The court considered the factors enumerated in section 61.08, Florida Statutes (2008). It found that the couple had lived lavishly during the short-term marriage and that both were in relatively good health. The trial court denied alimony for the following reasons. First, the wife had not established “any viable asset or current source of income from which” the husband could pay such an award, a finding of fact with which the wife disagrees. The trial court apparently agreed with the husband’s contention that he had supported the couple’s lifestyle since 2005 by spending nonmarital assets. Secondly, the court observed that
 

 bridge-the-gap alimony is, by definition, designed to “aid the recipient spouse in making the transition from married life to being single.”
 
 Bode v. Bode,
 
 [920 So.2d] 841, 844 (Fla. 4th DCA 2006). It should be used to assist a spouse with legitimate, identifiable, short-term needs under such circumstances in which an award is reasonable. and the other spouse has the ability to pay.
 
 Borchard v. Borchard,
 
 730 So.2d 748 (Fla. 2d DCA 1999). Bridge-the-gap alimony is most appropriately awarded in instances where the receiving spouse is already employed, possesses adequate employment skills, and requires no further rehabilitation other than a brief time to ease the transition to single life.
 
 *407
 

 Iribar v. Iribar,
 
 510 So.2d 1028, 1024 (Fla. Sd DCA 1987). Assuming, arguendo, Husband’s ability to pay anything approaching the one million dollars requested, Wife has not identified with specificity any short-term needs that cannot currently be met, with the possible exception of her expressed need for continuation insurance. Wife is currently unemployed and does not have any desire or plan to become employed in the future. More importantly, Wife has been separated for more than fifteen months, during which she has had ample time and money [through the temporary relief order providing $15,140 per month and exclusive occupancy of the marital home] to aid in her transition to the single life she enjoyed some five and one-half years earlier. She has, by her own admission, made no efforts to secure employment or otherwise prepare herself for single life.
 

 We agree with the trial court’s legal analysis and find no abuse of discretion in its denial of alimony.
 
 See Wofford v. Wofford,
 
 20 So.3d 470 (Fla. 4th DCA 2009).
 

 Affirmed.
 

 STEVENSON and CIKLIN, JJ., concur.