BARFIELD, Judge.
Michael Etheridge and his wife, Maria Etheridge, timely appeal the forfeiture of the 1981 Oldsmobile he was driving on October 8, 1990, when he was arrested for possession of cocaine, marijuana, and drug paraphernalia.[1] The parties do not dispute that section 932.703, Florida Statutes (1989), applies in this case. However, in his response to the Escambia County Sheriff’s Department’s motion for forfeiture, Etheridge raised the “innocent owner” exception to the statute, asserting that the vehicle was solely owned by Mrs. Ether-idge, who was out of town on business and “had no knowledge that the vehicle in question was used in any manner whatsoever.”
At the hearing, Mrs. Etheridge stated that she was a “salesperson-account executive” for a telephone company and that she was in Panama City when her husband was arrested. She testified that she was the registered owner of the Oldsmobile, which she bought to transport her three children because her business vehicle “only seats two.” She stated that the insurance was in her name only and that on the date her husband was arrested, she did not know he was using the Oldsmobile. She admitted she knew he had a criminal record, but denied that any of his prior convictions of which she was aware were drug-related or that she had any idea that he would be *1088 using the car to engage in any type of criminal activity.
On cross-examination, she stated that she had been married to Etheridge for six years, that she did not know why his driver’s license was suspended, and that she did “not really” know why he had previously been arrested.[2] She stated that her husband got rides to his work as a plumber and that he never drove the children around. She explained that they live with her father, who drives an old van and uses the Oldsmobile “only if something is wrong with the van.” She testified that a spare set of keys to the Oldsmobile “is hanging in my house for my father” and that she did not know how her husband got the car the day he was arrested, since she was in Panama City.
When she was asked what precautions she took to make sure her husband did not use the car, she stated, “Well, I think my understanding of our current family situation and financial situation, that’s prohibitive enough.” When asked if she took any physical precautions to keep him from using the car, she replied, “I do not see how I could.”
On redirect examination, she stated that she considered her not listing her husband on the insurance a precaution against his using the Oldsmobile, and that there was no physical way she could prevent him from having access to the car when she was out of town. Having stated that she “didn’t know the specifics” of her husband’s prior record, she then testified that there was nothing in that prior record involving drugs.
On recross-examination, she admitted that some of her husband’s arrests occurred during the course of the marriage, but again stated that she did not know “the specifics.” Upon the judge’s query, she testified that her husband did not have her permission to use the Oldsmobile while she was away.
The arresting officer had testified that Etheridge initially gave his brother’s name, then told him that the Oldsmobile was his “pride and joy” and bragged on the paint job. Etheridge called the officer a liar and denied telling him that the car was his pride and joy. On cross-examination he testified that he “never hardly used it at all” and that he did not tell his wife when he did.
Norma Sue Smith, the secretary to the attorney for the sheriff, testified that Mrs. Etheridge specifically told her on October 23, 1990, that “her husband” needed the Oldsmobile to transport their children when she was out of town on business.
Section 932.703(1) authorizes forfeiture of vehicles used to transport, conceal, or possess contraband articles (in this case, drugs). Section 932.703(2) provides an exception to the forfeiture statute “if the owner of such property establishes that he neither knew, nor should have known after a reasonable inquiry that such property was being employed or was likely to be employed in criminal activity.”
The Sheriff’s Department argued to the trial court that Mrs. Etheridge had not met her burden of proving she was an innocent owner, that it was clear there had been no “reasonable inquiry,” and that “she takes absolutely no measures to keep the vehicle out of her husband’s hands.” The Ether-idges argued that her unrefuted testimony shows Mrs. Etheridge was an innocent owner who had no reason to know that her husband was involved in drugs.
The judge’s memorandum order recited that Mrs. Etheridge was aware her hus *1089 band had a prior criminal history and his driving privileges were suspended, and that she had taken some measures to keep her husband from driving the vehicle. The judge concluded that any use of the vehicle by Etheridge would constitute an illegal act because his driver’s license was suspended, and that both husband and wife were aware of the illegality. The judge found that these facts “placed the owner-wife who often left the car at home unattended while she was out of town and in the care of her father who had a key to it, on notice that the vehicle would be employed in criminal activity if her husband drove it.” The judge ruled that Mrs. Etheridge did not use reasonable care that her property was not used in criminal activity, and that her efforts to safeguard her vehicle from her husband’s unauthorized use “were minimal and insufficient to warrant remission from forfeiture.” The final judgment of forfeiture found that Maria Etheridge did not exercise reasonable care that her automobile would not be used in criminal activity.
Appellants argue that the court erred as a matter of law in basing forfeiture on the wife’s knowledge of her husband’s driver’s license suspension, because driving with a suspended license is a misdemeanor, not one of the felonies which would call into play the forfeiture provision of section 932.708, which should be strictly construed. They attempt to distinguish In Re: 1979 Lincoln Continental, 405 So.2d 249 (Fla. 3d DCA 1981),[3] upon which the Sheriff had relied, on the fact that in that case the husband and wife were estranged, while here the Etheridges are married and see each other on weekends.
The Sheriff’s Department argues that the judge chose to believe the arresting officer and Ms. Smith, instead of the Ether-idges, and properly found that Mrs. Ether-idge was not an “innocent owner” in the sense contemplated by the statute. The brief points out that she admitted to Ms. Smith that her husband needed the car to transport the children when she was out of town, and that Etheridge indicated to the arresting officer that he regularly drove the car. It notes that Mrs. Etheridge testified she did not pay close attention to what went on in her husband’s life, points out that the law requires the owner who claims innocence to establish that she neither knew, nor should have known after a reasonable inquiry, that her automobile would be used in criminal activity, and argues that his prior criminal record put her on notice, or at least required her to make reasonable inquiry, which she failed to do.
The applicable standard of review in this case is “abuse of discretion,” i.e., the trial court’s ruling on forfeiture will be upheld unless no reasonable trial judge would have so ruled. Here, the factual determination of whether Mrs. Etheridge was an “innocent owner” entitled to the statutory exception required the trial judge to weigh the conflicting evidence and to evaluate the credibility of the witnesses. He had the opportunity to observe the witnesses as they testified and to decide what evidence was reliable, considering the demeanor of the witnesses, their respective interests in the case, and the conflict in their testimony. He was entitled to disbelieve any part of the testimony of any witness.
Mrs. Etheridge’s admission to the Sheriff’s Department secretary, that her husband needed the Oldsmobile to drive the children around, established her knowledge that he was using the vehicle. Her testimony to the contrary at the hearing undermined her credibility with respect to all of her testimony, including her statements regarding the extent of her familiarity with her husband’s criminal history, which in- *1090 eluded crimes that would give rise to forfeiture. She admitted that some of his arrests occurred during the marriage, and the judge could have concluded from the evidence presented that, notwithstanding her statements to the contrary, she was aware that her husband was driving the Oldsmobile with a suspended driver’s license, in blatant disregard of the law.
While reasonable trial judges presented with the same evidence may have reached different conclusions, we do not find it unreasonable to conclude that Mrs. Ether-idge either knew, or would have known if she had made a reasonable inquiry, that there was a likelihood her husband would use the Oldsmobile in a criminal venture, even if she was not aware that drugs would be involved. The evidence supports this trial judge’s finding that she did not use reasonable care to prevent her property from being used in criminal activity, so that she was not entitled to the statutory exception to forfeiture.
Finding no abuse of discretion in the trial court’s rulings, we AFFIRM the final judgment of forfeiture.
ALLEN, J., concurs.
ZEHMER, J., dissents, with written opinion.

. He was also charged with driving with a suspended license and resisting arrest without violence. His motion to suppress the evidence found in the warrantless search of his person was denied, and he later pled to the charges.

. When she stated that, she did not know what the past charges were, she was asked whether she pays attention to what goes on in her husband’s life, to which she replied: "Well, yes, I do. But at the same time my present jobs have kept me really busy. I don’t know how to explain it. But when I come home, I’m with the kids, and that’s about it.”
Later, after she denied knowing that his prior arrests involved burglary and stolen property, the following exchange took place:
Q. Basically you don’t know anything about what your husband’s criminal activity has been?
A. No.
Q. After he’s arrested, he doesn’t tell you anything and you don’t know anything about it?
A. I will only know what he tells me and what his attorney tells me.

. In that case, the appellate court ruled that on the evidence presented,
[T]he trial judge could properly have found that Mrs. Brown’s self-serving, uncorroborated, and highly dubious recounting of the circumstances under which she entrusted the vehicle to her supposedly estranged husband did not carry the affirmative burden, newly imposed upon an owner by the 1980 Florida Contraband Forfeiture Act, to establish that she "neither knew nor should have known after a reasonable inquiry that such property was being employed or was likely to be employed in criminal activity.”
405 So.2d at 250, footnote and cites omitted.