622 So.2d 541 (1993)
Frederick K. BAKER, Appellant,
v.
Alyce F. BAKER, Appellee.
No. 92-2563.
District Court of Appeal of Florida, Fifth District.
July 30, 1993.
Walter T. Rose, Jr. of Rose and Weller, Cocoa Beach, for appellant.
Stanley Wolfman, Merritt Island, for appellee.
STROKER, R.J., Associate Judge.
In this case, the trial court entered a final judgment of dissolution of the marriage between Frederick Baker (Ted) and Alyce Baker (Alyce). This appeal concerns whether the trial court erred by concluding that the antenuptial agreement entered into by Ted and Alyce in Pennsylvania was void because the agreement violated Florida's public policy. We reverse.
In June 1981, Ted and Alyce met at the Philadelphia Country Club in Pennsylvania and began dating almost immediately. Ted and Alyce were each sixty years old and living in Pennsylvania at the time and both had been previously married. When they met, Alyce was receiving $55,000 per year in alimony from her former husband. Six *542 months later, the couple became engaged a week or two before Christmas in 1981.
However, even before becoming engaged, Ted and Alyce discussed the idea of entering into an antenuptial agreement. When Ted suggested the idea, Alyce agreed and stated that an antenuptial agreement was alright with her. Alyce then independently chose her own attorney to represent her in negotiating and executing the agreement, which Ted's attorney drafted.
At the outset, the agreement disclosed the individual financial net worth of Ted and Alyce and designated Pennsylvania law to govern their rights. The agreement provided that Ted and Alyce completely waived any right to alimony, to equitable distribution of the property of the other, and to share in the estate of the other. However, if Alyce were to survive Ted as his spouse without a divorce, then the agreement established a Qualified Terminable Interest Property Trust (QTIP Trust) for Alyce's benefit. In this event, the trustee would hold title to the marital residence for Alyce's benefit during her lifetime.
After discussing the agreement with her, Alyce's attorney recommended to change a word in the amendment to the agreement to limit the discretion of the trustee of the QTIP trust if she survived Ted's death as his spouse. Ted accepted this change, which his attorney incorporated into the agreement. Alyce and Ted signed the agreement in late March 1982 in Pennsylvania.
Less than two weeks after signing the agreement, Ted and Alyce were married on April 3, 1982 in Valley Forge, Pennsylvania. For about five years, the couple lived in Pennsylvania, until Ted sold his construction business and retired. In September 1987, they moved to John's Island in Vero Beach, Florida.
However, in September 1991, dissolution proceedings began in Florida, after over nine years of marriage. The primary issue before the trial court concerned whether the antenuptial agreement was enforceable. At the time of the non-jury trial, Ted and Alyce were each seventy-one years old. The undisputed evidence at the trial showed that Alyce had given up her alimony income from her former husband when she married Ted, had never worked for a living, had no ability to support herself, and had no present income other than a small amount of social security benefits. However, Alyce also testified that even though she knew that she would not get any alimony under the agreement, she signed it anyway. Alyce further testified that Ted never threatened, forced, or coerced her into entering the agreement and that at the time of signing, she saw the document showing the value of Ted's financial assets.
On September 30, 1992, the trial court entered the final judgment of dissolution of the marriage. After considering all of the evidence, the trial court determined that Ted had fully and fairly disclosed his financial worth and that the couple had entered into the agreement without any fraud, duress, or misrepresentation. The trial court further found that the agreement was valid under Pennsylvania law and did not violate Pennsylvania's public policy.
However, the trial court also found that despite Ted's ability to pay permanent periodic alimony, the agreement made Alyce a pauper and a potential ward of the State of Florida. The trial court also determined that the agreement was unconscionable and overreaching. Therefore, the trial court concluded that the agreement was void in Florida because it violated Florida's public policy. The trial court then equitably distributed some personal property to Alyce and ordered Ted to pay $4,000 per month in permanent periodic alimony and to pay Alyce's attorney's fees and costs.
The issue on appeal is whether the trial court erred by concluding that the antenuptial agreement, which Ted and Alyce entered into in Pennsylvania, was void on the basis that it violated Florida's public policy. Ted contends that antenuptial agreements which completely waive the right to alimony are valid and enforceable in Pennsylvania and Florida, and thus, the *543 trial court mistakenly concluded that the agreement in the instant case violated Florida's public policy. In response, Alyce contends that despite the findings concerning the presence of full and fair financial disclosure and the absence of fraud, duress, or misrepresentation, the trial court properly found that the agreement was unconscionable and overreaching, and therefore properly concluded that it violated Florida's public policy.
In Florida, the courts have recognized the well-established principle that when contracting parties designate the law of a particular state to govern the contract, the designated law will govern any disputes under the contract, unless that law violates the public policy of the forum state. See Punzi v. Shaker Advertising Agency, Inc., 601 So.2d 599, 600 (Fla. 2d DCA 1992); Hirsch v. Hirsch, 369 So.2d 407, 408 (Fla. 3d DCA 1979). In the instant case, Ted and Alyce expressly chose Pennsylvania law to govern their rights under the agreement. Although the trial court initially determined that the agreement was valid under the designated law of Pennsylvania, the trial court also found that by completely waiving the right to alimony in the event of a divorce, the agreement left Alyce a pauper and a potential ward of the State of Florida. The trial court further found that since Ted had the ability to pay permanent periodic alimony, the agreement was unconscionable and overreaching. As a result, the trial court refused to uphold the agreement under the public policy of Florida.
However, a review of the law in both Pennsylvania and Florida shows that the antenuptial agreement in the instant case was valid and enforceable in both states. In Pennsylvania, antenuptial agreements are valid when executed by the parties with the benefit of full and fair financial disclosure and in the absence of fraud, misrepresentation, or duress. Simeone v. Simeone, 525 Pa. 392, 581 A.2d 162 (1990). See also Hamilton v. Hamilton, 404 Pa.Super. 533, 591 A.2d 720, 722-23 (1991) (holding that the lack of a reasonable provision for a financially dependent spouse does not render an antenuptial agreement unenforceable). Similarly, in Florida, an antenuptial agreement that makes an unfair or unreasonable provision for a financially dependent spouse is valid if the party in the inferior economic position freely and voluntarily executes the agreement with the benefit of either full and frank financial disclosure or a general and approximate knowledge of the character, value, and extent of the other party's property and in the absence of fraud, deceit, duress, coercion, misrepresentation, or overreaching. Del Vecchio v. Del Vecchio, 143 So.2d 17, 20-21 (Fla. 1962); Masilotti v. Masilotti, 158 Fla. 663, 29 So.2d 872 (1947). In the instant case, we find that the trial court erred by concluding that the antenuptial agreement violated Florida's public policy on the basis of the unfair outcome resulting from Alyce's complete waiver of alimony. See Cladis v. Cladis, 512 So.2d 271, 273-74 (Fla. 4th DCA 1987) (holding that a finding by the trial court that an antenuptial agreement is unfair and inequitable is not sufficient by itself to set aside the agreement); Ivanhoe v. Ivanhoe, 397 So.2d 410, 411 (Fla. 5th DCA 1981) (recognizing that a party may waive the right to alimony in an antenuptial agreement); Turner v. Turner, 383 So.2d 700, 703 (Fla. 4th DCA), review denied, 392 So.2d 1381 (Fla. 1980) (finding that the public policy of Florida does not prevent a party from completely waiving the right to alimony).
Furthermore, the record in the instant case provides no evidence to support the trial court's finding that the antenuptial agreement was unconscionable and overreaching. At the non-jury trial, Alyce testified that prior to their engagement, she and Ted agreed to enter into an antenuptial agreement. Alyce further testified that she independently chose her own attorney, who successfully obtained a change in the agreement to Alyce's benefit. Alyce also testified that she fully understood that she would not receive any alimony under the agreement and that she voluntarily signed the agreement without any threat, duress, or coercion by Ted. In fact, Alyce testified that Ted never said that he would not marry *544 her if she did not sign the agreement. As a result, the record shows that Alyce freely entered into the agreement after full financial disclosure by Ted and without any overreaching by Ted. See Casto v. Casto, 508 So.2d 330, 333-34 (Fla. 1987) (applying the standards set for antenuptial agreements in Del Vecchio to postnuptial agreements and holding that a bad fiscal bargain which was freely executed and the lack of competent assistance of counsel are not proper grounds upon which to vacate or modify a postnuptial agreement); Jackson v. Seder, 467 So.2d 422, 422-23 (Fla. 4th DCA), review denied, 479 So.2d 118 (Fla. 1985) (reversing a trial court's order setting aside an antenuptial agreement because the record provided no evidence to support the trial court's finding that the agreement was unconscionable, lacked consideration, and constituted overreaching). Thus, we hold that the trial court erred by finding that the agreement in the instant case was unconscionable and overreaching.
Overall, the evidence in the record demonstrates that while the antenuptial agreement was unfair and inequitable to Alyce, she freely and voluntarily executed the agreement with the benefit of full and fair disclosure of Ted's financial assets and in the absence of fraud, deceit, duress, coercion, misrepresentation, or overreaching. As a result, the agreement in the instant case was valid and enforceable under the law and public policy of both Pennsylvania and Florida, and thus, we find that the trial court erred by refusing to uphold the agreement. Accordingly, we reverse the portion of the final judgment of dissolution in which the trial court concludes that the agreement was void and remand the cause to the trial court for further proceedings consistent with the terms of the agreement.
REVERSED and REMANDED.
HARRIS, C.J., and DIAMANTIS, J., concur.