THOMAS, Judge.
 

 Mark W. Stemler (“the husband”) appeals from the trial court’s order invalidating the antenuptial agreement entered into by the husband and Heather Stemler (“the wife”). We affirm.
 

 Facts and Procedural History
 

 The husband and the wife were married in June 1997. The husband is 15 years older than the wife and, at the time of the parties’ marriage, had accumulated real-estate holdings and other property worth approximately $2 million. The wife had little in the way of assets. The husband insisted that the parties enter into an ante-nuptial agreement.
 

 
 *56
 
 The husband contacted an attorney in a firm he had used for property transactions to draft the agreement. The agreement provided, in pertinent part, that in the event of a divorce the wife would not have any claim to any property the husband owned before the marriage. Likewise, the husband would not have any claim to any property the wife owned before the marriage. The agreement provided that any property accumulated during the marriage would be divided according to the manner in which it had been titled; property titled in the husband’s name would belong to the husband, property titled in the wife’s name would belong to the wife, and property titled jointly would be divided between the parties. The agreement also provided that if the parties had been married for at least 10 years at the time of divorce, the wife would receive $50,000 and would waive all other rights to alimony.
 

 The wife received a copy of the agreement on April 9, 1997, and retained independent counsel to review the agreement. Nearly one month later, on May 7, 1997, the wife signed the agreement.
 

 In October 2006, the wife filed a petition for a divorce in the Lee Circuit Court. After numerous continuances, the trial court heard ore tenus evidence on December 27 and 28, 2007, and on January 2, 3, 24, and 25, 2008. On April 28, 2008, the trial court entered an order divorcing the parties and invalidating the antenuptial agreement; the April 28 order was not a final judgment. The trial court’s order included, among other findings, the following findings regarding the antenuptial agreement:
 

 “(a) That the [wife] was not adequately advised of the [husband’s] assets
 
 and
 
 income prior to or at the time she signed the Antenuptial Agreement and had no independent knowledge of the extent of the [husband’s] assets
 
 and
 
 income.
 

 “(b) At the time the [wife] signed the Agreement, the Exhibits which represented the assets owned at the time by the [husband] were not attached to the document ....
 

 “(c) The Antenuptial Agreement contains a provision under the heading ‘Financial Disclosure’:
 

 “ ‘The [husband and the wife] have revealed to each other full financial information regarding their respective net worth, assets, holdings, income, and liabilities. They have made full disclosure to each other, not only by their discussions with each other, but with a full explanation of their respective financial statements and summaries that have been exchanged and signed by each of the parties.... ’
 

 “The evidence is clearly contrary to the above and there is absolutely no evidence of exchange or presentment of financial statements.
 

 [[Image here]]
 

 “(e) Considering all of the circumstances and facts surrounding the Ante-nuptial Agreement it is basically unfair and inequitable to the [wife] and is disproportionate to the means of the [husband].”
 

 On May 28, 2008, the husband filed a “postjudgment” motion to alter, amend, or vacate the trial court’s April 28, 2008, order. The trial court entered its final judgment adjudicating all matters in the case on June 12, 2008. The husband’s postjudgment motion was denied by operation of law on September 10, 2008.
 
 [1]
 
 The
 
 *57
 
 husband appeals, asserting as error the trial court’s determination that the ante-nuptial agreement was invalid.
 

 Issues
 

 The husband raises three issues in his appeal: (1) whether the trial court erred in finding that the antenuptial agreement was unfair and inequitable to the wife and disproportionate to the means of the husband; (2) whether the trial court erred in finding that the husband had failed to rebut the presumption that the husband had engaged in concealment or that the wife had lacked a sufficient general knowledge of the husband’s income and assets; and (3) whether the trial court erred in allowing the wife to introduce into evidence a copy of the antenuptial agreement.
 

 Standard of Review
 

 “ ‘
 
 “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’
 
 Water Works & Sanitary Sewer Bd. v. Parks,
 
 977 So.2d 440, 443 (Ala.2007) (quoting
 
 Fadalla v. Fadalla,
 
 929 So.2d 429, 433 (Ala.2005), quoting in turn
 
 Philpot v. State,
 
 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’
 
 Wattman v. Rowell,
 
 913 So.2d 1083, 1086 (Ala.2005) (quoting
 
 Dennis v. Dobbs,
 
 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’
 
 Waltman v. Rowell,
 
 913 So.2d at 1086.”
 

 Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.,
 
 985 So.2d 924, 929 (Ala.2007).
 

 Analysis
 

 The antenuptial agreement provides that Florida law governs its construction and application, and both parties agree that Florida law controls. The test used by Florida courts to determine if an antenup-tial agreement is valid was expressed in
 
 Casto v. Casto,
 
 508 So.2d 330 (Fla.1987). In that case, the Florida Supreme Court held:
 

 “Postnuptial agreements[
 
 2
 
 ] regarding alimony and marital property are properly enforceable in dissolution proceedings. There are, however, two separate grounds by which either spouse may challenge such an agreement and have it vacated or modified.
 

 “First, a spouse may set aside or modify an agreement by establishing that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching.
 
 Masilotti v. Masilotti,
 
 158 Fla. 663, 29 So.2d 872 (1947);
 
 Hahn
 
 [v.
 
 Hahn,
 
 465 So.2d 1352 (Fla.Dist.Ct.App.1985) ];
 
 O’Connor [v. O’Connor,
 
 435 So.2d 344 (Fla.Dist.Ct.App.1983) ].
 
 See also Del Vecchio v. Del Vecchio,
 
 143 So.2d 17 (Fla.1962).
 

 “The second ground to vacate a settlement agreement contains multiple elements. Initially, the challenging spouse must establish that the agreement makes an unfair or unreasonable provi
 
 *58
 
 sion for that spouse, given the circumstances of the parties.
 
 Del Vecchio,
 
 143 So.2d at 20. To establish that an agreement is unreasonable, the challenging spouse must present evidence of the parties’ relative situations, including their respective ages, health, education, and financial status. With this basic information, a trial court may determine that the agreement, on its face, does not adequately provide for the challenging spouse and, consequently, is unreasonable. In making this determination, the trial court must find that the agreement is ‘disproportionate to the means’ of the defending spouse.
 
 Id.
 
 This finding requires some evidence in the record to establish a defending spouse’s financial means. Additional evidence other than the basic financial information may be necessary to establish the unreasonableness of the agreement.
 

 “Once the claiming spouse establishes that the agreement is unreasonable, a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse’s finances at the time the agreement was reached. The burden then shifts to the defending spouse, who may rebut these presumptions by showing that there was either (a) a full, frank disclosure to the challenging spouse by the defending spouse before the signing of the agreement relative to the value of all the marital property and the income of the parties, or (b) a general and approximate knowledge by the challenging spouse of the character and extent of the marital property sufficient to obtain a value by reasonable means, as well as a general knowledge of the income of the parties. The test in this regard is the adequacy of the challenging spouse’s knowledge at the time of the agreement and whether the challenging spouse is prejudiced by the lack of information.
 
 Id. See Belcher v. Belcher,
 
 271 So.2d 7 (Fla.1972);
 
 Del Vecchio.”
 

 Casto,
 
 508 So.2d at 333 (footnote omitted).
 

 The husband first argues that the trial court erred in finding that the ante-nuptial agreement was unfair or inequitable to the wife and disproportionate to the means of the husband. The agreement provided that, after a marriage of 10 years, the wife would receive $50,000, any property that was titled in her name, and a share of any property titled jointly with the husband. None of the parties’ real property was titled in the wife’s name, and only the marital home had been jointly titled in the parties’ names. Additionally, at the time of the marriage the husband had a net worth of approximately $2 million, which had increased to between $5 million and $10 million at the time of the divorce.
 

 Florida courts have held similar provisions to be unfair to the challenging spouse and disproportionate to the means of the spouse seeking to enforce the agreement.
 
 See Hjortaas v. McCabe,
 
 656 So.2d 168, 170 (Fla.Dist.Ct.App.1995). (agreement held inequitable when wife left six-year marriage with $48,000 and husband was worth $2 million);
 
 see also Casto,
 
 508 So.2d at 334 (agreement inequitable when wife received $225,000 and husband’s assets totaled $10 million). Therefore, following the holdings of
 
 Hjortaas
 
 and
 
 Casto,
 
 the trial court could have found that the agreement was unfair to the wife and disproportionate to the means of the husband.
 

 The husband next argues that, even if the agreement was unfair or inadequate, its validity should be upheld because, he argues, the wife had a sufficient general knowledge of the husband’s assets and income. In support of his argument, the husband cites
 
 Waton v. Waton,
 
 887 So.2d 419 (Fla.Dist.Ct.App.2004). In
 
 Wa-
 
 
 *59
 

 ton,
 
 the husband prepared an antenuptial agreement disclosing his income and attached to it a list of his assets, including the values for most of the assets. The husband had interests in three businesses. However, those assets did not have an expressed valuation; they were listed as having an unknown or undetermined value. One of the three interests, the husband’s interest in a life-insurance business, was a major asset of the husband’s estate. The husband stated his ownership percentage in that business and provided the following information regarding the revenues of the business:
 

 “ ‘Corporation itself makes approximately $750,000.00 [] a year gross on renewal commissions on current policies, deductions are made from the gross commissions to pay the respective agents their proportionate or required commissions. Corporation makes approximately $1,000,000.00 a year gross on new policies, but from these sums payments are made to cover [ ] salaries, office overhead, and general operating expenses of the office.’ ”
 

 887 So.2d at 424.
 

 The court in
 
 Waton
 
 found that the above information regarding the husband’s interest in the business, coupled with the husband’s disclosure of his income and the value of his other assets, gave the wife sufficient general and approximate knowledge of the husband’s net worth and income.
 

 This case is clearly distinguishable from
 
 Waton.
 
 After hearing disputed evidence, the trial court made a factual finding that none of the exhibits listing the assets owned by the husband had been attached to the antenuptial agreement at the time the wife signed it. Absent those exhibits, the agreement in this case did not contain any information regarding the husband’s income or the value of any of his assets. The only information present in the agreement was a list of assets with no attached values. Furthermore, there was no information in the agreement disclosing the husband’s income. The husband argues that, even absent the exhibits, the wife had a general knowledge of the husband’s assets and was familiar with them. The husband also argues that the wife had a general knowledge of his income because the parties lived together before the marriage and the wife could observe his lifestyle. However, the wife’s knowledge that certain assets existed or the fact that she had viewed some of the assets is not sufficient to charge her with knowledge of the value of those assets. Similarly, the fact that the parties had lived together and the wife had observed the husband’s lifestyle is not sufficient to charge her with knowledge of the husband’s income.
 

 “To bolster its finding that [the wife] possessed such knowledge the trial court attached substantial significance to some essentially irrelevant facts: i.e., that the parties resided together before the marriage, that [the wife] had a real estate license, ... that [the wife] had visited the Maine property on several occasions, that [the wife] knew of the construction of the Inn of Naples, and that [the wife] worked at the Inn. [The wife’s] observations of [the husband’s] Maine and Naples properties could possibly have led her to a marginal understanding of the extent of [the husband’s] wealth, but there is nothing to suggest that [the wife] possessed the financial sophistication to convert what she saw into an appraised value.”
 

 Hjortaas v. McCabe,
 
 656 So.2d at 170-71.
 

 In this case, as in
 
 Hjortaas,
 
 the husband did not present any evidence indicating that the wife possessed the necessary financial sophistication to convert the information listed in the agreement to an ap
 
 *60
 
 praised value. The fact that the husband and the wife had lived together for a time before their marriage and the fact that the wife knew of the existence of the husband’s assets are insufficient to demonstrate that the wife had sufficient ability to turn that knowledge into an appraised value of the husband’s assets.
 

 The husband next argues that the testimony of the wife’s father demonstrates that the wife knew the value of the husband’s assets. The wife’s father testified that the wife told him the husband was worth “a couple million dollars.” The husband also points to a notation by the wife’s attorney that the husband was worth approximately $2 million. Although that evidence may be evidence indicating that the wife had a general knowledge of the husband’s assets, the wife’s knowledge of the husband’s assets is only part of the test imposed by the Florida courts.
 
 See Casto,
 
 508 So.2d at 333 (“The defending spouse” must show that “the challenging spouse” possessed “a general and approximate knowledge ... of the character and extent of the marital property sufficient to obtain a value by reasonable means,
 
 as well as a general knowledge of the income of the parties.”
 
 (emphasis added)). The only information regarding the husband’s income was the income-tax returns that the husband alleges had been attached as exhibits to the agreement. However, the trial court found that those exhibits had not been attached at the time the wife signed the agreement. Absent the exhibits, there was no information from which the wife could determine the husband’s income.
 

 Finally, the husband argues that his disclosure was sufficient because the wife did not request any additional information regarding the value of his assets or his income. However, “[u]nless it is shown that the woman is, in fact, the dominant and moving party the burden is not upon her to inquire, but upon the man to inform.”
 
 Del Vecchio v. Del Vecchio,
 
 143 So.2d 17, 21 (Fla.1962). In this case, it is clear that the husband was the dominant and moving party behind the antenuptial agreement. Therefore, the husband bore the burden to disclose the extent and value of his assets and income to the wife. For the aforementioned reasons, the husband did not satisfy his burden to show that either he made a full, frank disclosure of the value of his assets and income or that the wife possessed a sufficient knowledge of the value of his assets and income. Therefore, the trial court’s order is due to be affirmed on this issue.
 
 [3]
 

 Finally, the husband argues that the trial court erred in allowing the wife to introduce a copy of the antenuptial agreement. The husband argues that the best-evidence rule precluded the court from allowing the wife to introduce a copy of the antenuptial agreement when the husband had introduced into evidence the original agreement. Rule 1002, Ala. R. Evid., provides: “To prove the content of a writing, the original writing is required, except a otherwise provided by statute, these rules, or by other rules applicable in the courts of this state.” Rule 1001(2), Ala. R. Evid., provides, in part: “An ‘original’ of a writing is the writing itself or any counterpart intended to have the same effect by a person executing or issuing it.”
 

 The copy of the agreement introduced by the wife had been signed and notarized and was accompanied by a letter from the husband’s attorney stating, in part, “I have enclosed for your records a copy of the
 
 *61
 
 executed antenuptial agreement in the above referenced matter.” Thus, it appears that the parties intended the copy to have the same legal effect as the original.
 
 See
 
 Ala. R. Evid. 1001(2), Advisory Committee’s Notes (“Multiple copies of a writing constitute originals if they were intended equally to evidence the transaction by the person executing it.”). Therefore, the trial court did not err in allowing the wife to introduce a copy of the original agreement.
 

 Conclusion
 

 The agreement was inequitable to the ■wife and disproportionate to the means of the husband. The husband did not meet his burden of disclosure, and the wife did not have a sufficient general knowledge of the husband’s income. Therefore, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . The husband filed his postjudgment motion before the trial court had entered its final judgment. A postjudgment motion filed before the entry of a final judgment “becomes effective when the judgment is entered.”
 
 New Addition Club, Inc. v. Vaughn,
 
 903 So.2d
 
 *57
 
 68, 72 (Ala.2004). Thus, the time for the trial court to rule on the husband's postjudgment motion did not begin to run until it entered its final judgment.
 

 [2]
 

 .
 
 Casto
 
 applied the standards set forth for antenuptial agreements in prior Florida case-law to postnuptial agreements.
 
 See Baker v. Baker,
 
 622 So.2d 541, 544 (Fla.Dist.Ct.App.1993).
 

 [3]
 

 . The husband also argues that the trial court erred in finding that the agreement had been the product of duress. Because we find that the trial court correctly invalidated the agreement based on the husband's lack of disclosure, we need not address that issue.