COHEN, J.
 

 We review the trial court’s final judgment of dissolution of marriage and its decision to enforce the antenuptial agreement between Heidi Lee McNamara, Wife, and Dennis C. McNamara, Husband, under Georgia law. The trial court erroneously awarded Husband a credit for expenses incurred to maintain the marital residence during the parties’ separation, and, accordingly, we reverse the $71,276.12 credit against the property’s sale proceeds. We otherwise affirm the final judgment and the order upholding the validity of the antenuptial agreement.
 

 This is the McNamaras’ second appearance before this court.
 
 [1]
 
 Once again, we
 
 *80
 
 are confronted with a challenge to the parties’ antenuptial agreement. The ante-nuptial agreement was executed in Georgia where the parties lived during the first ten years of their marriage before Husband retired and they moved to New Smyrna Beach.
 

 Wife challenges the trial court’s decision to enforce the agreement’s Georgia choice-of-law provision because Georgia, unlike Florida, does not recognize the existence of a confidential relationship between persons who have agreed to marry. Therefore, she asserts that the agreement’s choice of Georgia law is contrary to this state’s public policy of fairness and the highest degree of good faith, candor, and sincerity in all matters relating to an ante-nuptial agreement. This court reviews
 
 de novo
 
 the trial court’s choice of law determination.
 
 Collins Moving & Storage Corp. v. Kirkell,
 
 867 So.2d 1179, 1181 (Fla. 4th DCA 2004).
 

 “A contract is not void, as against public policy, unless it is injurious to the interest of the public, or contravenes some established interest in society.”
 
 Harris v. Gonzalez,
 
 789 So.2d 405, 409 (Fla. 4th DCA 2001) (citations omitted). The mere difference between the law of the forum and that of a foreign state does not make application of the foreign law contrary to Florida public policy.
 
 Wilkinson v. Manpower, Inc.,
 
 531 F.2d 712, 715 (5th Cir.1976). Absent a public policy violation, this state enforces the parties’ choice of law, in this case, Georgia.
 
 See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,
 
 761 So.2d 306, 311 (Fla. 2000);
 
 Baker v. Baker,
 
 622 So.2d 541, 543 (Fla. 5th DCA 1993).
 

 In Georgia, it behooves a person planning marriage to exercise ordinary diligence in making an independent verification of contractual terms and representations contained in an antenuptial agreement.
 
 Mallen v. Mallen,
 
 280 Ga. 43, 622 S.E.2d 812, 815 (2005). In this state, it is black letter law that the parties to an antenuptial agreement do not deal at arms’ length with one another and that the relationship is one of trust and confidence.
 
 See Lutgert v. Lutgert,
 
 338 So.2d 1111, 1115 (Fla. 2d DCA 1976).
 

 The trial court considered the difference between Florida’s and Georgia’s laws and found that the agreement met both state’s standard for enforcement of an antenuptial agreement. Wife’s overriding concern, framed as a public policy violation, is that the agreement inadequately provides for her. However, this alone does not invalidate an antenuptial agreement.
 
 See Del Vecchio v. Del Vecchio,
 
 143 So.2d 17, 20 (Fla.1962). Further, a wife may waive her right to alimony of any type through an antenuptial or post-nuptial agreement, and such waiver does not contravene public policy.
 
 Hahn v. Hahn,
 
 465 So.2d 1352, 1353-54 (Fla. 5th DCA 1985).
 

 In
 
 Baker,
 
 622 So.2d at 544, this court held an antenuptial agreement which waived alimony and left the wife a pauper and potential ward of the state was not violative of Florida public policy. Despite the agreement’s unfair and inadequate provision for the wife, it was freely and voluntarily executed with the benefit of full and fair disclosure of the parties’ assets, and was valid and enforceable under both Pennsylvania and Florida law.
 
 Id.
 
 While
 
 *81
 
 the financial disclosure should be full, fan*, and open, it does not need to be minutely detailed or exact.
 
 Del Vecchio,
 
 143 So.2d at 21. The fact that one party apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify an antenuptial agreement.
 
 Casto v. Casto,
 
 508 So.2d 330, 334 (Fla.1987);
 
 Del Vecchio,
 
 143 So.2d at 20.
 

 Florida’s public policy does not protect the spouse who signs an antenuptial contract freely and voluntarily, has some understanding of his or her rights, and who has or reasonably should have had, a general and approximate knowledge of the proponent’s property.
 
 Id.
 
 In this case, the trial court concluded that Wife was knowledgeable about her rights and had a general and approximate knowledge of Husband’s assets. Early in their relationship, Husband discussed his need for an ante-nuptial agreement. Husband informed her that he was a partner in an Atlanta car dealership and owned a small percentage of an Orlando car dealership. Husband provided her with a current financial statement that showed he was a multi-million-aire and possessed significant income-producing assets. Wife was also provided financial statements of both dealerships in which the husband had an ownership interest, as well as financial information about Husband’s family holding company. The trial court found that Husband not only made a full and frank disclosure of the extent of his finances, but that there was no further financial information to provide Wife. Although Wife received the financial statements the night before the agreement was to be executed, her general and approximate knowledge of Husband’s worth was not confined to that disclosure.
 

 Wife was not unsophisticated in such matters. She had formerly been employed as a defense industry contract administrator and later formed a business offering consulting services based upon her expertise in reviewing and understanding such contracts. Wife had previously executed a similarly detailed antenuptial agreement with her former spouse. Wife received several drafts of the antenuptial agreement and participated in its review and editing over the weeks preceding its execution. The parties’ informal wedding, attended by a minister, one witness, and a photographer, easily could have been postponed to allow Wife additional time to review the financial statements, or to seek independent counsel which Husband and his counsel repeatedly urged her to do.
 

 The same conclusions about disclosure governed the trial court’s determination that the antenuptial agreement was valid. An inadequate provision for the impecunious spouse, as the trial court acknowledged in this case, raises a presumption of concealment or that the challenging spouse lacked knowledge of the proponent’s finances at the time the agreement was reached.
 
 Casto,
 
 508 So.2d at 333;
 
 Del Vecchio,
 
 143 So.2d at 20. The proponent may rebut these presumptions by showing that there was either a full and frank disclosure of the nature, character, and value of the proponent’s property to the challenging spouse before the agreement was signed, or that the circumstances were such that the challenging spouse reasonably ought to have had such knowledge.
 
 Del Vecchio,
 
 143 So.2d at 19-20. The test is the adequacy of the knowledge of the challenging spouse; there must be some understanding of one’s rights and a general and approximate knowledge of the proponent’s property and resources.
 
 Id.
 
 at 21. The basic issue is concealment, not the absence of disclosure, and the challenging spouse may not repudiate if he or she is not prejudiced by lack of information.
 
 Id.
 

 
 *82
 
 The questions of whether a challenging spouse had some understanding of his or her rights, and had or reasonably should have had, a general and approximate knowledge of the proponent’s property, are matters of fact to be determined by the trial court upon the evidence, and its finding will not lightly be disturbed.
 
 Id.
 
 at 20. In reviewing the trial court’s decision, “[w]e take the facts most favorably in support of the trial court’s decision.”
 
 Waton v. Waton,
 
 887 So.2d 419, 422 (Fla. 4th DCA 2004). “Furthermore, ‘the findings of the trial court come to this court clothed with a presumption of correctness and will not be disturbed absent a showing that there was no competent evidence to sustain them.’ ”
 
 Id.
 
 Substantial, competent evidence supports the trial court’s findings that Husband adequately disclosed his assets and that Wife signed the contract freely and voluntarily, fully understood her rights, and was informed by Husband of his general and approximate worth.
 

 Wife also contends that the trial court erred in awarding Husband a $71,276.12 credit against the sale proceeds of the marital residence in New Smyrna Beach because the agreement obligated him to provide her a marital home and all reasonable household and living expenses associated with it during the marriage that ended July 25, 2008. Husband asserts that the residence ceased to be a marital home when he acceded to Wife’s demand that he vacate the premises. The trial court allowed Husband a credit for $71,276.12 in insurance and taxes he paid, but denied Husband’s request for an additional credit of $19,862.72, for ordinary expenses such as the plumbing service, disposal and moving expenses.
 

 The agreement provides:
 

 Notwithstanding any of the other provisions of this AGREEMENT to the contrary, MR. McNAMARA shall provide a marital home in which the parties shall reside, and he shall be responsible for the payment of all reasonable household and living expenses of the parties during the marriage.
 

 We find merit to Wife’s argument that the trial court erred in awarding Husband a credit for expenses he incurred with respect to the marital home. Generally, a husband and wife are jointly responsible for any obligations arising from the home, such as taxes, home improvement expenses, and homeowner’s insurance premiums.
 
 Cintron v. King,
 
 961 So.2d 1010, 1012-13 (Fla. 4th DCA 2007). Here, however, the antenuptial agreement modified that obligation and required Husband to be responsible for all of the subject expenses. We acknowledge that proceedings under chapter 61 are equitable and governed by basic rules of fairness as opposed to the strict rule of law, but contract principles play a role in the context of an antenuptial agreement.
 
 See Lashkajani v. Lashkajani,
 
 911 So.2d 1154, 1159 (Fla. 2005). Even in the face of an antenuptial agreement’s waiver of spousal support, the prevailing law “still requires one spouse, who has the ability, to support the more needy spouse until a final judgment of dissolution is entered.”
 
 Fernandez v. Fernandez,
 
 710 So.2d 223, 225 (Fla. 2d DCA 1998). The parties do not claim that the language of the antenuptial agreement is ambiguous and, according to its plain meaning, we reach a different conclusion from the trial court.
 
 See Dows v. Nike, Inc.,
 
 846 So.2d 595, 601 (Fla. 4th DCA 2003). Accordingly, we reverse the trial court’s award of a $71,276.12 credit to Husband against the sale proceeds of the New Smyrna Beach residence.
 

 Wife next argues that she is entitled to half of the $725,000 net sale proceeds from the sale of the parties’ condominium. After hurricane damage
 
 *83
 
 necessitated extensive repairs and improvements to the marital home, the parties purchased the Tradewinds condominium as a temporary residence pending repairs. Husband testified that the proceeds belonged to him and Wife, but he deposited the funds into a certificate of deposit he alone held. The parties borrowed $400,000 to buy the condominium, but the note was not paid off. Instead, they agreed to renew and transfer the note to the marital home because the expenses for refurbishing and remodeling it far exceeded the insurance proceeds. Husband documented the expenses and showed that an amount far exceeding the condominium sale proceeds was expended to renovate the beach home by the parties’ agreement. We conclude that the trial court did not abuse its discretion in concluding that Wife was not entitled to an equitable distribution from the condominium sale proceeds because the parties placed all of the proceeds, and more, into the jointly titled marital home.
 

 Wife also argues that the trial court erred by failing to award temporary support retroactive to May 17, 2006, the date she filed a petition for temporary support. Since the parties’ separation, Husband made voluntary, tax-free monthly payments of $6000 to Wife. Because Wife did not request retroactive relief at the hearing, the general magistrate did not recommend any retroactive arrearages. Wife did not file any exceptions to the general magistrate’s report recommending that the trial court increase Husband’s monthly payment to the taxable sum of $8900. After reviewing the general magis-' trate’s factual findings, the trial court awarded a corrected amount of $8257 in monthly temporary support. We find no error in the trial court’s failure to award retroactive temporary support.
 

 Accordingly, we reverse the trial court’s award to Husband of a $71,276.12 credit against the sale of the New Smyrna Beach residence, but otherwise affirm the final judgment in all respects.
 

 AFFIRMED IN PART and REVERSED IN PART.
 

 PALMER and EVANDER, JJ., concur.
 

 [1]
 

 . In
 
 McNamara v. McNamara,
 
 988 So.2d 1255 (Fla. 5th DCA 2008), we held that the antenuptial agreement's Georgia choice of law provision, waiving the Husband's obli
 
 *80
 
 gation to pay the Wife's pre-judgment attorney's fees, was contrary to public policy in Florida.